MERKEL v. LAZARD et al.

(Supreme Court, Appellate Division, First Department. June 15, 1906.)

PRINCIPAL AND AGENT—RIGHTS OF THIRD PERSONS—ACTION—QUESTION FOR JURY—APPARENT AUTHORITY.

Plaintiff having informed one employed by defendants as a clerk that she desired to invest in stocks, he invited her to call at the office, and, after a consultation there between plaintiff and the clerk, he stated that he would consult the firm's broker, and, returning shortly, advised plaintiff to buy certain stock, and other similar transactions occurred, and plaintiff received communications on letter heads of the firm, purporting to be signed by defendants. The clerk, whose sole duties were those of a bookkeeper, purchased stocks with plaintiff's money, and appropriated the same. Defendants claimed that the communications were forgeries. There was evidence that the bookkeeper had in two instances dealt with other customers in relation to the purchase of stock. Held, that it was a question for the jury whether the clerk had apparent authority to deal with plaintiff.

[Ed. Note.—For cases in point, see vol. 40, Cent. Dig. Principal and Agent, § 724.]

Exceptions from Trial Term, New York County.

Action by Lizzie Merkel against Alexander Lazard and others. Heard on exceptions ordered to be heard in the Appellate Division in the first instance. Exceptions sustained.

Argued before O'BRIEN, P. J., and McLAUGHLIN, PATTERSON, INGRAHAM, and HOUGHTON, JJ.

R. F. Rabe, for plaintiff.
Louis Marshall, for defendants.

McLAUGHLIN, J. This case comes before the court on exceptions ordered to be here heard in the first instance. The defendants are bankers and brokers·doing business in the city of New York under the name of Lazard Freres. For many years prior to the month of April, 1904, it had in its employ as a clerk one Krumnow, whose duties were to attend to the posting of books of account relating to business between the firm and its foreign correspondents. He was not authorized to buy or sell stocks or bonds for customers of the firm, or to deal with them in regard to such subjects, nor was he authorized to receive money or checks from customers of the firm; his sole duties being limited to those above stated. The work which he performed was at a desk in an inner office, somewhat removed from the desk or counter at which business was transacted with customers. He resided at Hoboken, N. J., where the plaintiff and her husband lived, and was on intimate terms with them in a social way. The plaintiff testified that she and her husband were on terms of social intimacy with Krumnow, and one time when they were at dinner she asked him if his firm bought and sold stocks, and he informed her that it did. She then said she had a little money she would like to invest, and he responded: "Oh, well, all right; come over." Subsequently, and on the 18th of November, 1902, she drew $2,000 from the Hoboken Savings Bank in the form of a check payable to her own order, and went to the office of the defendant, and asked for Krumnow. He was then in the inner office at his desk, but was sent for, and came out and had a conversation with her, at which she stated she would like to invest this money on a margin. Krumnow said to her: "You must wait a minute, and I will go in and speak to our broker." He went to the inner office, but returned shortly, saying that the broker advised not to buy on a margin, but to buy outright. She then inquired what were good stocks to buy. Krumnow specified several, and she therupon indorsed and delivered the check to him for the purpose of buying certain shares of stock. A few months later she again went to the office of the defendant, and asked for Krumnow. He was sent for, came out of the inner office, had a conversation with her, and at its conclusion she decided to buy certain other shares of stock, and for that purpose gave to Krumnow a check for $2,000, drawn by the treasurer of the Trust Company of New Jersey to her own order, she indorsing it in blank. Some time therafter she again went to the office of defendant, had a conversation with Krumnow under circumstances similar to those previously had, and she then·gave him a check for $500 to buy certain other shares of stock. The check, immediately following such transaction, was turned over by Krumnow to the defendant in payment of stocks purchased by him in his own name. The stocks purchased by Krumnow with plaintiff's money were 50 shares of Texas Pacific, 50 shares of Erie, and 25 shares of Southern Railway Company, which, as soon as purchased by the defendants, were delivered to him, in accordance with the custom of the Stock Exchange. It appeared that, so far as the defendants were concerned, plaintiff's name was never mentiond in any of the transactions, or in connection with the purchases referred to. She never had an account on defendants' books, and, so far as the firm knew, it never received her money, nor had possession of any

stocks belonging to her. Immediately following each transaction between plaintiff and Krumnow, he sent to her on the printed letter heads of the defendants a statement as to the purchases made, which purported to be signed in the name of the defendants, and her purchases were marked "Paid" by means of a rubber stamp used in the cashier's department. He also from time to time sent her statements purporting to be accounts current on printed forms of the firm, stating the condition of her account. These accounts and statements it is claimed were all forgeries. They were all in the handwriting of Krumnow, and there was nothing on the books of the firm indicating that any such accounts or statements had even been sent out, and he never was authorized by the firm to issue any statements or accounts to the plaintiff or any other customer. In the latter part of March or first of April, 1905, plaintiff's husband informed Krumnow that he was going to Germany, and would like to have some of his wife's money that had been delivered to the defendants for the purchase of stock, and he would come to the office at a time stated and get a letter of credit. Krumnow answered: "All right; I will have it ready for you as soon as you come, so that all you need to do is to sign it, and that is all." The plaintiff's husband thereafter went to the office of the defendants, asked for his letter of credit, and was then informed that neither he nor his wife had any account on defendants' books. He then asked for Krumnow, and it turned out he was not in the office. This interview led to the discovery of the fraud perpetrated upon the plaintiff. A few days later Krumnow conveyed the equity in a house which he owned to the plaintiff, and a day or so thereafter he suddenly died, whether by his own hand or not does not clearly appear. Subsequently plaintiff brought this action to recover from the defendants the money as represented by the checks which she indorsed and delivered to Krumnow.

Defendants, by their answer, denied any liability. At the conclusion of the trial the defendants' counsel moved for the direction of a verdict, which was denied, and an exception taken. Plaintiff's counsel then moved for the direction of a verdict, but before the same was decided defendants' counsel asked to go to the jury upon certain questions of fact. This request was denied, exception taken, and the court thereupon directed a verdict for the plaintiff for the full amount claimed, to which, as appears from the order denying a motion for a new trial, an exception was taken, which was ordered to be heard in the first instance by the Appellate Division.

I am of the opinion that the exception to the denial of defendants' request to go to the jury was well taken. Krumnow was in the employ of the defendants as a bookkeeper, and there was no evidence that he was authorized to do any work except such as was immediately connected with or incident to that, which did not include the buying or selling of stocks or bonds, or the transaction of business with customers in relation to such matters. The defendants were bound by the acts of Krumnow in so far as they had given him authority or the appearance of authority. The general rule is that a principal is not only bound by the acts of his agent which are within the scope of his authority, but also by such acts as justify a party dealing with him in believing that the

principal has given him authority to do them. Walsh v. Hartford Fire Ins. Co., 73 N. Y. 5; Edwards v. Dooley, 120 N. Y. 540, 24 N. E. 827; Hanover Bank v. American Dock & Trust Co., 148 N. Y. 612, 43 N. E. 72, 51 Am. St. Rep. 721. Here, as already indicated, there was no evidence that Krumnow was specifically authorized to deal with the plaintiff. There was some evidence that the defendants had given him the appearance of authority, and whether it was sufficient to justify the plaintiff in dealing with him to believe that he had actual authority was a question for the jury. It certainly was not of such a character as justified the court in holding, as a matter of law, that the plaintiff had a right to rely upon his apparent authority, and by reason thereof the defendants were bound by his acts. The transactions took place in the defendants' office during business hours. The checks were payable to the plaintiff's order, were indorsed in blank by her, and immediately following delivery they were used by defendants' bookkeeper in purchasing stock in his own name. This, taken in connection with the fact that statements were immediately sent to the plaintiff on defendants' stationery, on which the purchases were marked "Paid" by a stamp used by their cashier, and that the bookkeeper had in at least two other instances dealt with two other customers in relation to the purchase of stocks or bonds, presented a question of fact, and not of law. It was for the jury to say whether the defendants had given Krumnow apparent authority to deal with the plaintiff, and which justified her in believing that he had actual authority from the defendants to receive her money and purchase the stocks directed by her. This question, therefore, should have been submitted to the jury, with appropriate instructions bearing on the subject.

It follows that the exceptions are sustained, and a new trial ordered, with costs to defendants to abide event.

O'BRIEN, P. J., and INGRAHAM and HOUGHTON, JJ., concur. PATTERSON, J., concurs in result.