Walter Morris, Respondent, *v.* Edward L. Crusius, Doing Business under the Firm Name and Style of New York X-Ray and Pathological Laboratories, Appellant.

First Department, November 30, 1923.

Physicians and surgeons — action to recover damages based on alleged improper advice by agent of defendant — defendant made blood tests for physicians and advertised that he did not practice and that none of his employees practiced — diagnosis made by defendant's agent from result of blood test and advice given were beyond scope of agent's employment — defendant is not liable.

An employer who is engaged in the business of making blood tests for physicians and who advertises that he does not practice himself and does not permit any of his employees to practice, is not liable in an action based on an alleged improper diagnosis of the result of a blood test and improper medical advice given by one

of his employees to a dentist, who had a test of his own blood made by the defendant, where it appears that the dentist knew that the defendant did not permit his employees to make a diagnosis or give medical advice. The acts of the employee were outside the scope of his employment.

FINCH and DOWLING, JJ., dissent, with opinion.

APPEAL by the defendant, Edward L. Crusius, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 13th day of February, 1923, upon the verdict of a jury for $1,200, and also from an order entered in said clerk's office on the 6th day of February, 1923, denying the defendant's motion for a new trial made upon the minutes.

*Nadal, Jones & Mowton* [*Edward P. Mowton* of counsel], for the appellant.

*Folger & Rockwood* [*N. Otis Rockwood* of counsel], for the respondent.

MARTIN, J.:

Plaintiff, a dentist, brought an action to recover damages for alleged shame, mental perturbation, sickness, physical and mental disability and mental anguish, together with financial loss, because of absence from his practice and also by reason of loss in business ventures, all of which are alleged to have been caused by negligence on the part of the defendant in making and interpreting a blood test and in giving plaintiff an erroneous report with reference to the condition of his blood.

The defendant had been the personal owner of a business, operating under the trade name of New York X-Ray and Pathological Laboratories, which trade name had been registered. On or about April 12, 1917, a corporation known as X-Ray Laboratories of New York, Inc., was incorporated and it purchased the registered trade name and business of the New York X-Ray and Pathological Laboratories. The defendant was president of the corporation X-Ray Laboratories of New York, Inc., and had been president for some time before November, 1919. In a certificate filed in the county clerk's office in January, 1918, it appears that defendant represented himself as being the owner of the business. There was evidence from which the jury might properly find that he was its owner at the time of the transaction between plaintiff and Mr. Maschke referred to in the record, at which time the X-Ray Laboratories of New York, Inc., was doing business at No. 500 Fifth avenue, New York city.

The work in which it was engaged was that of making X-ray and bacteriological examinations for the medical and dental professions.

On the windows and doors of the premises occupied by the corporation there were painted the words " New York X-Ray and Pathological Laboratories, X-Ray Laboratories of New York, Inc., Proprietor." The corporation sent printed announcements or circulars to the profession and advertised under the corporation name.

Plaintiff, a dentist, having an office for the practice of his profession at Glen Cove, N. Y., knew of this testing laboratory and referred people to it.

In November, 1919, and for at least two months prior thereto, plaintiff had been suffering from an abnormal condition of his hands or nails which he was unable to heal by use of ointments which he applied on the advice of his physicians.

He testified that on the occasion of a visit to the laboratory in November, 1919, the thought came to him that he might be able to learn whether the condition of his hands was due to something in his blood. Accordingly he made inquiries and was referred to Mr. Maschke, a chemist. Mr. Maschke was not a physician, but was supposed by plaintiff to be one. He was a bacteriologist and chemist in the employ of the corporation X-Ray Laboratories of New York, Inc., making blood tests, doing bacteriological work, blood chemistry, examinations of sputums, urines and tissues. He took a specimen of plaintiff's blood and a specimen of his urine.

Mr. Maschke made a test of plaintiff's blood showing the number of blood cells contained therein, and a urinalysis both qualitative and quantitative. The blood test report showed a positive result.

On November 26, 1919, plaintiff visited the laboratories and asked for and received the report in an envelope. Mr. Maschke was not in his office at that time. Subsequent to receiving the report of November 26, 1919, and later in the afternoon plaintiff after calling on the telephone for Mr. Maschke several times, finally reached him and requested information about the report. He says Mr. Maschke told him he was in " pretty bad shape and have got a bad disease," suggested treatment and also recommended that he see one of his local doctors.

There is conflict in the evidence as to whether a charge was made to plaintiff for the analysis; but plaintiff testified that he paid Mr. Maschke twenty-five dollars for the analysis and ointments to be furnished.

Plaintiff thereupon went to a drug store to obtain medicine and consulted a practicing physician who did not prescribe for him but referred him to a specialist in seriology and dermatology. He consulted the specialist on December 3, 1919, and asked him to make a blood test, which was made in the early part of December, 1919. It showed negative. Early in 1920 plaintiff went to Dr.

Joseph Gardner Hopkins, who was in charge of making blood tests at the College of Physicians and Surgeons. Dr. Hopkins at plaintiff's request made such a test with the result that it also showed negative.

Reports of analyses by the X-Ray Laboratories of New York, Inc., and all communications in respect to such work were given to the profession exclusively, no work being done for the public.

Mr. Maschke testified that he did not at any time characterize the result of the report of the blood test; neither did he prescribe or suggest to plaintiff any method of treatment. But the jury evidently believed plaintiff.

In making the test, Mr. Maschke checked it by the Hecht-Weinberg control, which is a recognized method of checking such a test.

The testimony was that a single test showing positive cannot be depended upon alone; that blood taken from a patient may at one time show plus, yet within two or three weeks, or even less time, another specimen will show negative; that it is necessary in order that a physician may make a proper diagnosis in such cases, to have other manifestations or indications than one blood test alone; that before reaching a conclusion as to the existence of specific infection, several analyses of the patient's blood should be made.

Plaintiff's position on this appeal is that defendant was employed to tell him what the test disclosed; and that plaintiff did not rely upon his own interpretation of the report, it being stated in respondent's brief that " * * * plaintiff disclaimed absolutely undertaking to interpret the report that was handed him and testified in fact that he did not know what it meant and relied entirely on Dr. Maschke's statement to him of its meaning." And again in respondent's brief it is said that plaintiff relied not on his own deductions but " solely on what Dr. Maschke told. him."

At the trial, at the request of counsel for defendant, the court charged: " * * * that even if the jury find that Dr. Maschke was in the employ of the defendant but acted without the scope of his employment, if he did advise or consult with the plaintiff in connection with any treatment, that he was acting *without* the scope of his employment and the defendant would not be responsible for any damage resulting therefrom."

Thereafter the court charged, at the request of counsel for plaintiff: " * * * that if the defendant, through Dr. Maschke, undertook to advise the plaintiff of the result of his examination, he was under just that high duty of care and responsibility that he was in making the examination," to which defendant took an excep-

First Department, November, 1923.      [Vol. 207

tion. Thereupon the court charged at the request of defendant that " the ordinary relationship of patient and physician did not exist between the plaintiff and Dr. Maschke."

Reviewing the testimony as to the scope of Mr. Maschke's employment, we find that plaintiff testified that he, as a dentist, had referred people to the New York X-Ray and Pathological Laboratories, Inc., for the purpose of having X-rays of teeth taken; that in November, 1919, he made a call at the office of the laboratories to ask advice in reference to an X-ray picture; that while he was there he read pamphlets which were on a table in the waiting room, being Exhibits 2, 2a and 2b.

Exhibit 2 reads in part: " *   *   * We realize the psychological importance to the patients of knowing whether the blood is positive or negative, so they may be treated at once, or have their mind eased; " that the method employed " insures the most scientific diagnosis that can be made *   *   *; " that the work is done " for nine thousand physicians and dentists."

Exhibit 2a is in part as follows: " Dear Doctor:— We do not now, nor have we ever practiced Medicine or Dentistry, nor do we permit any physician or dentist connected with these laboratories to practice privately. We also do not permit any member of our staff to suggest treatments, or recommend to a patient any member of either profession."

Plaintiff says he did not read this latter portion of Exhibit 2a.

Exhibit 2b stated: " We wish to co-operate with the profession in every way possible and will therefore not give a patient the interpretation of the Radiographs unless requested to do so by the Doctor."

In this connection plaintiff further testified that, having read the pamphlets and having attended to the business about which he called at the office, he inquired for and was referred to the " Pathological Department," where he went and made known his purpose to " Dr. Maschke " who took charge of him; that he asked Dr. Maschke whether he thought a blood test might show something as to the cause of the condition of his hands; that Dr. Maschke said, " Yes, it will show everything," and told him that the fee, including the ointments and salves which he was going to get for plaintiff, would be twenty-five dollars, which plaintiff says he paid. Whereupon Dr. Maschke took the blood for the test.

Plaintiff further testified that when he called for the reports they were delivered to him and he was informed that he " would have to see Dr. Maschke; that Dr. Maschke was out on some operation and would not be back until later in the day."

Later he spoke with Dr. Maschke over the telephone and had the conversation referred to above.

We find no evidence in the record to show that Maschke's oral diagnosis and advice were within the scope of his employment. We are of the opinion that what was said by Maschke over the telephone after plaintiff had received the finished product of the laboratory, was entirely extraneous and without the scope of his employment.

While plaintiff might have gathered from the report that he was positively infected, his reliance was on no such interpretation by him. His counsel appreciates the character of the report; that it purports to be an analysis from but one point of view and not a diagnosis; that its purpose is to inform a professional man of one phase of a patient's condition and not to furnish a patient with a final statement based upon all phases of his condition.

The plaintiff's contention in this case is that defendant is liable for damages on the theory of *respondeat superior*, which implies that the act of the employee was within the scope of his authority. The making of the test and of the report was what defendant undertook. But the diagnosis and the advice subsequently given over the telephone were manifestly outside of Mr. Maschke's work for defendant. We are concerned with defendant's liability to plaintiff and not with that of Maschke. It is on this telephonic interpretation, diagnosis and advice that plaintiff relies, rejecting all suggestion that his injuries came as a result of his own interpretation of the report of the blood test.

We are, therefore, of the opinion that the judgment and order should be reversed, with costs, and the complaint dismissed, with costs.

CLARKE, P. J., and SMITH, J., concur; DOWLING and FINCH, JJ., dissent.

FINCH, J. (dissenting):

The plaintiff was induced by advertisements of the defendant to submit to a blood test, which was made by one Dr. Maschke, an employee of defendant. He received a report on such test which was written in technical medical terms. Upon inquiring of Dr. Maschke concerning this report, plaintiff was informed that he was infected with a specific disease of the blood. Plaintiff reasonably might apply for a construction of this report to the same source from which he received it, and if within the apparent scope of the employee's authority to give such information, plaintiff would not be bound by any lack of actual authority. (*Morrison* v. *Chapman*, 155 App. Div. 509.) In this connection it is to be noted that in a letter soliciting the making of blood tests, the defendant states, among other things, that the method employed " insures the most scientific *diagnosis*

that can be made." Whether said Dr. Maschke was acting within the apparent scope of his employment in diagnosing the plaintiff's condition was properly submitted to the jury as a question of fact. (*Merkel* v. *Lazard*, 114 App. Div. 25; *Murgatroyd* v. *Town of Hempstead G. & E. L. Co.*, 52 id. 625.)

I am of the opinion that the verdict of the jury is supported by the evidence, and, therefore, that the judgment and order should be affirmed.

DOWLING, J., concurs.

Judgment and order reversed, with costs to the appellant, and complaint dismissed, with costs.