(121 App. Div. 628.)

LILIENTHAL et al. v. GERMAN AMERICAN BREWING CO.

(Supreme Court, Appellate Division, First Department. October 25, 1907.)

PRINCIPAL AND AGENT—POWER OF AGENT—RATIFICATION.

In an action on a contract negotiated and afterwards modified by a salesman, the questions whether he had authority to modify the contract, and, if he had no such authority, whether his principal did not ratify his act, *held*, under the evidence, to be for the jury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 40, Principal and Agent, §§ 724, 725.]

Appeal from Trial Term, New York County.

Action by Albert Lilienthal and another against the German American Brewing Company. From a judgment for plaintiffs, and an order denying a new trial, defendant appeals. Reversed, and new trial granted.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and HOUGHTON, JJ.

Warren McConihe, for appellant.
Charles W. Coleman, for respondents.

HOUGHTON, J. In the year 1904 a salesman of the plaintiffs, who are copartners, bargained with defendant for the purchase of a car load of hops of the growth of 1905, to be delivered after January 1, 1906, at 27 cents per pound. By mutual memoranda signed by the plaintiffs and defendant, this bargain was confirmed. Upon the salesman's return to plaintiffs' place of business, he reported to the plaintiffs that the president of the defendant had been largely instrumental in enabling him to sell two other car loads of hops, and that the plaintiffs owed some kind of compensation therefor. Thereupon one of the plaintiffs told the salesman that he himself was capable of looking after the matter, and that he left it entirely to him to do what he thought

best. On the salesman's next visit to the defendant's place of business, in adjustment and satisfaction of this obligation of plaintiffs to defendant, by memorandum in writing in plaintiffs' name signed by himself, he modified the contract for the purchase of the car load of hops by providing that the purchase price should be at the market price, not to exceed, however, 27 cents per pound. When the time of delivery arrived, the price of hops was much below 27 cents. The defendant offered to take them at the then market price, and the plaintiffs insisted that, if delivered, they should be at 27 cents per pound. The defendant refused to accept them at that price, claiming that the contract had been properly modified, and the plaintiffs brought this action to recover the damages which they claim to have sustained.

The court refused to permit the defendant to go to the jury upon the question as to whether or not the salesman had authority to modify defendant's contract, or, if he had no authority, whether plaintiffs had ratified his act of modification, and submitted to them only the question as to how many pounds of hops a car load contained, instructing them, when that was ascertained, to find a verdict for plaintiffs for the difference between the market price proven and 27 cents. We think the court erred in refusing to submit to the jury the question of the salesman's authority to modify the contract; and, if he had no such authority, whether plaintiffs did not ratify his act. There was no dispute that the plaintiffs told the agent to settle the matter of the compensation of defendant for aiding in the sale of two car loads of hops in such manner as he saw fit. Instead of agreeing to pay a sum of money, or arbitrarily reducing the price of the car load of hops which defendant had bargained for, he agreed that the defendant need pay only the market price prevailing at the time they were to be delivered. Under the then condition of the hop market, it might properly be said that this was a reasonable bargain, and one of which the plaintiffs could not complain. Indeed, on the proof as it stood upon the trial, the defendant might well have asked for a direction of a verdict in its favor.

In addition to this undisputed authority given by the plaintiffs to the salesman to adjust the defendant's claim against them, the salesman testifies that he reported to the plaintiffs what he had done at some period before any dispute arose; and the secretary of the defendant testified that in November, 1905, he called plaintiffs' attention to the fact that defendant's order for hops had been modified. On this latter occasion plaintiffs insisted upon settling other matters of difference between themselves and the defendant before taking up the modification to which their attention was then called. If plaintiffs knew what their agent had done, and made no timely objection to it, the jury might find that they ratified his act, although it was originally unauthorized. The court erred in refusing to submit to the jury the questions requested by the defendant.

The judgment and order must be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.

INGRAHAM, J. (concurring). I concur with Mr. Justice HOUGHTON, and I am also of the opinion that, if there was a breach of the contract by the defendant, the measure of damages was the mar-

ket price on the 23d day of January or the 15th of February. It was therefore error to refuse the testimony offered by the defendant as to the market value of the hops in January and February. On January 23d the defendant expressly demanded the delivery of the hops which were then due under the original contract, and stated that the refusal to submit samples and prices at that time would be taken as a refusal on the plaintiffs' part to comply with the modified contract. This position was restated by the letter of February 5th, and the 15th of February was then fixed as the definite date for a breach of the contract on the part of one party or the other. The position of both parties had then been stated; the plaintiffs claiming that their rights were to be determined by the original contract of September 5, 1904, while the defendant claimed that the modified contract should control. If the jury should sustain the plaintiffs' contention, there was certainly evidence to base a finding that there had been a breach of the contract on the 15th of February, 1905.