ALEXANDER HEDEMAN, Appellant, *v.* FAIRBANKS, MORSE
AND COMPANY, Respondent.

Argued May 28, 1941; decided July 29, 1941.

*Sidney M. Wittner* for appellant. The Triangle contract is complete and enforceable and in breach thereof defendant is liable for damages. (*Rubin* v. *Dairymen's League Co-op. Assn.*, 284 N. Y. 32; *Edison, Inc.*, v. *Blackman Distributing Co.*, 66 Fed. Rep. [2d] 722; *Wakeman* v. *Wheeler & Wilson Mfg. Co.*, 101 N. Y. 205; *Taylor* v. *Morgan's Sons Co.*, 124 N. Y. 184; *Orester* v. *Dayton Rubber Mfg. Co.*, 228 N. Y. 134; *Ehrenworth* v. *Stuhmer & Co.*, 229 N. Y. 210; *Horton* v. *Hall & Clark Mfg. Co.*, 94 App. Div. 204; *Stone* v. *Argersinger*, 32 App. Div. 208; *Kenney* v. *Knight*, 127 Fed. Rep. 408; *Pancoast* v. *Industrial Glass Co.*, 148 App. Div. 473; 210 N. Y. 565; *Jacquin* v. *Boutard*, 89 Hun, 437; *Turner* v. *Goldsmith*, 1 Q. B. 544.) Plaintiff is entitled to recover both under his written and oral contract. (*Dibble* v. *Dimick*, 143 N. Y. 549; *Taylor* v. *Morgan's Sons Co.*, 124 N. Y. 184; *Abel* v. *Nelson*, 104 N. Y. Supp. 362; *Stone* v. *Argersinger*, 32 App. Div. 208; *Jacquin* v. *Boutard*, 89 Hun, 437; *Murray Realty Co.* v. *President & Directors of Manhattan Co.*, 162 Misc. Rep. 21; *Pancoast* v. *Industrial Glass Co.*, 148 App. Div. 473; 210 N. Y. 565; *Warren Chemical & Manufacturing Co.* v. *Holbrook*, 118 N. Y. 586.)

*Robert B. Cumming* and *John B. Gates* for respondent. Audiola did not breach its contract with Triangle. (*Curtiss Candy Co.* v. *Silberman*, 45 Fed. Rep. [2d] 451; *Rubin* v. *Dairymen's League Co-op. Assn.*, 284 N. Y. 32; *Biber Bros. News Co.* v. *New York Evening Post*, 144 Misc. Rep. 405; *Watson* v. *Gugino*, 204 N. Y. 535; *Ford Motor Co.* v. *Kirkmyer Motor Co.*, 65 Fed. Rep. [2d] 1001; *DuPont* v. *Claiborne-Reno Co.*, 64 Fed. Rep. [2d] 224; 290 U. S. 646; *Huffman* v. *Paige-Detroit Motor Car Co.*, 262 Fed. Rep. 116; *Motor Car Supply Co.* v. *General Household Utilities Co.*, 80 Fed. Rep. [2d] 167; *Goodyear* v. *Koehler Sporting Goods Co.*, 159 App. Div. 116; 220 N. Y. 749; *Redican* v. *Interchangeable Magnetic Sign Co.*, 162 App. Div. 803.) Assuming, but not conceding, that Audiola breached its contract with Triangle, plaintiff has no claim for damages. (*Friede* v. *White Co.*, 244 Fed. Rep. 272; *Stockton Commission Co.* v. *Narragansett Cotton Mills, Inc.*, 11 Fed. Rep. [2d] 618;

*Fuller* v. *Bradley Contracting Co.*, 183 App. Div. 6; 229 N. Y. 605; *Caldwell Co.* v. *Connecticut Mills Co.*, 225 App. Div. 270; 251 N. Y. 565; *Gray & Co.* v. *Western Borax Co.*, 99 Fed. Rep. [2d] 239; *Mende, Inc.*, v. *Wertz Co.*, 133 Misc. Rep. 355.)

RIPPEY, J. Plaintiff, a salesman, brought this action against his employer to recover commissions alleged to be due him and for damages for wrongful discharge and other counts. Defendant rested at the close of plaintiff's case. Upon motion by defendant, the trial judge directed a verdict in favor of plaintiff for $689.53 and interest, representing commissions earned by plaintiff under his contract with defendant prior to May 16, 1934, the date of its actual or attempted termination, and for defendant on all other claims. Upon appeal, the evidence together with any inferences reasonably to be drawn therefrom must be considered in aspect most favorable to plaintiff and if, when so considered, questions of fact arose, it was error for the court to take those questions from the jury and direct a verdict for defendant (*Getty* v. *Williams Silver Co.*, 221 N. Y. 34).

The Audiola Radio Company of Chicago, in October, 1933, was the manufacturer of radio receivers for sale through jobbers, department stores, furniture stores and similar large retail outlets and plaintiff desired to obtain the agency for the exclusive sale thereof within the city of New York, Long Island, and the State of New Jersey north of but not including Mercer and Monmouth counties. On the 30th day of October, 1933, the parties entered into a written agreement whereby the plaintiff was employed by the manufacturer to sell radio receivers under the general supervision and direction of the manufacturer within the aforesaid territory at prices and upon terms from time to time to be designated by the manufacturer for a period of one year ending October 30, 1934. The contract further provided that the plaintiff should devote as much of his time, attention and energies as might be necessary " to actively and energetically increase the sale of the articles " and that he

would not engage in the manufacture or sale of any articles which in the judgment of the manufacturer would conflict or compete with its products during the period of the contract and for one month thereafter. The agreement provided that he should receive as compensation for all services rendered commissions as might be from time to time established by the manufacturer on orders approved and accepted by the manufacturer during the term of the contract and thereafter shipped to and paid for by the purchaser. The evidence shows that five per cent was the agreed commission to be paid on all sales. The manufacturer reserved the right to make direct sales to export account, national sales outlets or manufacturers distributing nationally that might have outlets in the said territory and on such sales no commission should be due unless the manufacturer specially agreed. It was provided that the agreement might be terminated by either party prior to its expiration by delivering to the other thirty days' notice in writing of election to terminate and that no commission would be payable on sales made after the termination of the contract.

Performance of the contract was immediately undertaken by the parties. Shortly thereafter the Audiola Company was taken over by defendant, who adopted plaintiff's contract and assumed all obligations of the Audiola Company. Brown, the sales manager for Audiola, was continued in a similar capacity by defendant. The defendant began the manufacture of washing machines and refrigerators in addition to radios. Then followed an intensified effort to procure distributors who were to be given exclusive territorial rights not only for radios but for refrigerators and washing machines and for defendant's entire line. Plaintiff called Brown's attention to the Triangle Company, a long-time successful distributor, and inquired of Brown as to how a contract with that concern, which might be for a long term, would affect his contract with the defendant and his right to five per cent commission within the territory which that contract covered. Brown thereupon promised the plaintiff that if such a contract was negotiated

by defendant he would receive five per cent commission on all sales made by Triangle during the full term of its contract. Consideration was given to the fact that upon the execution of such a contract the effect would be plaintiff's removal from the scene as a jobber for defendant's products within the territory exclusively assigned to him.

Thereupon, and on or about April 9, 1934, through plaintiff's solicitation and aid defendant negotiated a contract with the Triangle Radio Supply Co., Inc., for the exclusive distribution within the territory covered by plaintiff's contract of the *entire line* of defendant including radio receivers, refrigerators and accessories, the term of which was to extend to and expire March 31, 1935, with the privilege of a year's extension. The terms of this contract are found in the oral testimony at the trial and in documentary evidence. The contract included provisions, among others, that the Triangle Company should be the exclusive distributor of defendant's entire line in the five boroughs of New York city, Long Island and Westchester county, that the details of prices were to be standard, that the term of the contract was for one year with privilege of extension as above indicated and that payments for merchandise when delivered and accepted were to be made on the 10th and 25th of each month, payment date to be arrived at as follows: " All net invoices maturing approximately a week before or a week after the 10th will be paid on the 10th, and all invoices maturing approximately a week before or a week after the 25th will be paid on the 25th." All invoices were subject to a discount of two per cent on the dates provided for payment. The contractual relation between defendant and the Triangle Company seems to have been finally established on April 13, 1934, the parties at once entered into performance and there is some evidence that the term of the contract was extended for an additional term of four years.

Performance under the Triangle contract proceeded for some months during which time shipments were made by defendant on orders procured by the Triangle Company.

Among the orders was one forwarded to defendant by Triangle on September 29, 1934, for 188 radios. That order was approved and accepted by defendant before any differences arose between Triangle and defendant over their contract. In view of a controversy which later arose between Triangle and the defendant relating entirely to other matters, the latter refused to ship the order except for cash on delivery. The Triangle Company refused to pay cash on delivery since it was not required so to do under the terms of its contract. The evidence showed that Triangle had been successfully engaged in business since 1922, was a *bona fide* purchaser and was financially responsible. There was evidence that then and previous to that time defendant had many unfilled orders through Triangle from *bona fide* purchasers.

On May 19, 1934, the Triangle Company wrote Brown that sales resistance to the sales of defendant's refrigerators was so great that certain improvements it suggested should be incorporated to provide means for successful competition with other manufacturers. Thereafter defendant entered into negotiations with Bruno-New York, Inc., for the purchase of a patent or the procurement of a license under a patent for the improvement of its refrigerators along the line suggested by the Triangle Company but the only way that the right to use such improvements could be secured was by assigning to Bruno-New York, Inc., the exclusive right to distribute its refrigerators in the territory reserved for Triangle. Defendant thereupon, notwithstanding vigorous protest by the Triangle Company, entered into contract with Bruno-New York, Inc., for the exclusive distribution of its refrigerators within the territory covered by the Triangle agreement and earlier exclusively assigned to plaintiff. On November 3, 1934, defendant wrote a letter to Triangle terminating its contract. Thereafter Bruno-New York, Inc., gave many orders to defendant which it accepted and shipped. Among those approved and accepted was one for 1,500 refrigerators costing upwards of $100,000, but, through delay in the manufacturing process, shipments thereof were not made before March 31, 1935.

By letter dated April 16, 1934, the defendant notified the plaintiff that his services would no longer be needed as of May 15, 1934, and that his contract would thereupon on that date be deemed to be terminated. It is plaintiff's claim and there is evidence to support his claim that the written contract was modified through sales manager Brown or a new contract entered into with defendant whereby he was to receive a commission of five per cent on all sales made under the Triangle and Bruno-New York, Inc., contracts at least up to March 31, 1935, if orders were accepted and approved by defendant though the goods were not shipped. Specifically, he claims that he was entitled to commissions (1) on sales made by him before May 15, 1934, the alleged effective date of his discharge, (2) on sales made by the Triangle Company for defendant before and after that date, (3) on orders placed by Triangle and Bruno-New York, Inc., and approved by defendant although not filled, (4) on sales made by defendant to the successor of Triangle after the termination of the Triangle contract to March 31, 1935, and that he was entitled to damages for defendant's breach of its contract with him and of its contract with Triangle.

Among other things the trial court erroneously held as matter of law that the evidence adduced failed to establish that Brown was authorized to modify the written contract between plaintiff and defendant or to make any new contract with plaintiff for defendant. There was no evidence of any written authority. Nevertheless, contrary to the ruling of the court, we think there was ample evidence not only of the authority of Brown to modify the contract but also to make a new contract with the plaintiff, if one were made, and to negotiate with the Triangle Company and later with Bruno-New York, Inc., but, if not, there was evidence of ratification by defendant of his assumed and apparent authority and of acts by defendant to estop it to assert the contrary. If the question of agency is not open to doubt, it is one for the court. But where no written authority of the agent has been proven, questions of agency

and of its nature and scope and of ratification by or estoppel of the principal, if dependent upon contradictory evidence or evidence, though not contradictory or disputed, from which different inferences reasonably may be drawn, are questions of fact to be submitted to the jury under proper instructions by the court (*Western Transportation Co.* v. *Hawley*, 1 Daly, 327; *Bingham* v. *Harris*, 10 Daly, 522, affd., 97 N. Y. 626; *Merkel* v. *Lazard*, 114 App. Div. 25; *Lilienthal* v. *German American Brewing Co.*, 121 App. Div. 628). Affirming the authority of Brown to modify defendant's written contract with plaintiff on the subject of his right to commissions under the Triangle contract is the admission by defendant by its motion for direction of verdict in plaintiff's favor for the item of $467 commissions on sales by Triangle made and accepted by defendant prior to May 16, 1934, though the goods were not delivered or paid for until a later date.

Defendant's motion embraced two items, (1) an item of commissions aggregating $222.53 arising on sales by plaintiff prior to May 16, 1934, and (2) an item of $467 commissions at five per cent arising out of sales by Triangle which were accepted and approved prior to May 16, 1934, but were not consummated by delivery and payment therefor until August 1, 1934. Interest was allowed on the first item from May 16, 1934, and on the second item from August 1, 1934. By the motion for direction of a verdict in plaintiff's favor for the item of $467, defendant admitted that the written contract between plaintiff and the Audiola Company had been so modified, at least, as to permit of sales by others during the period of plaintiff's employment on different terms than those embodied in the written contract. Consequently, plaintiff's discharge did not affect his right to compensation for procuring the Triangle contract (*Dibble* v. *Dimick*, 143 N. Y. 549, 553). There was evidence to sustain plaintiff's claim that defendant had agreed to pay plaintiff commission on sales made by the Triangle Company and approved by defendant prior to March 31, 1935. Among such sales was one of 188 radios and possibly many

other sales. Defendant could not defeat plaintiff's right to compensation for services rendered by refusing arbitrarily to accept orders from the Triangle Company which were within the terms of the contract (*Taylor* v. *Morgan's Sons Co.*, 124 N. Y. 184).

Orders for a large amount of merchandise were delivered to defendant from Bruno-New York, Inc., accepted by defendant and the goods in part delivered prior to March 31, 1935. Whether plaintiff was entitled to commission upon such sales depends upon whether the defendant breached its contract with the Triangle Company. That it did is in accord with the evidence. The evidence showing defendant's refusal to ship radios except upon terms different than stated in the Triangle contract and of the taking away of the territory within which Triangle was awarded exclusive distribution was sufficient in itself, without other evidence which the record contains, of a breach of the Triangle contract by defendant thereby subjecting the defendant to a claim for damages (*Orester* v. *Dayton Rubber Mfg. Co.*, 228 N. Y. 134). Damages would not be limited to those arising out of the refusal of the defendant to fill orders actually given but plaintiff would be entitled to recover such damages as he could show he had sustained by total breach of the contract, the measure thereof depending upon the circumstances of the case (*Orester* v. *Dayton Rubber Mfg. Co.*, supra; *Wakeman* v. *Wheeler & Wilson Mfg. Co.*, 101 N. Y. 205). Upon showing the breach by defendant of its contract with Triangle, the latter company was entitled to damages. Plaintiff in turn was entitled to damages measured by the commissions which he might have earned under reasonable probabilities during the remainder of the term of the Triangle contract (*Prescott* v. *Buffalo Fire Appliance Corp.*, 237 App. Div. 198; *Wakeman* v. *Wheeler & Wilson Mfg. Co.*, supra). Evidence of plaintiff tending to some extent at least to establish such damages was erroneously excluded by the trial court. If the written contract between plaintiff and defendant was modified or a new contract made between them, as plaintiff claims, his right to commissions

could not be defeated by any subsequent modification of the Triangle Company agreement or its termination by defendant without his consent (*Pancoast* v. *Industrial Glass Co.*, 148 App. Div. 473; affd., 210 N. Y. 565; *Horton* v. *Hall & Clark Mfg. Co.*, 94 App. Div. 404, 407).

The trial court erroneously held as matter of law that the contract between Triangle and defendant was so uncertain, indefinite and illusory as to be unenforceable. We have already referred to evidence of its terms. By the contract, Triangle was made the exclusive distributor of defendant's entire line including radios, refrigerators and washing machines within the territory which defendant later assigned to Bruno-New York, Inc., and was barred from handling any line competing with defendant's refrigerators. From the evidence adduced the terms of the contract were sufficiently clear, certain and definite to render it enforceable (*Edison, Inc.*, v. *Blackman Distributing Co.*, 66 Fed. Rep. [2d] 722, 727–729; *Pancoast* v. *Industrial Glass Co., supra*). Even though, as defendant claims, it were to be held that the contract lacked mutuality at its inception, there was evidence of performance by defendant and a consideration arose which related back to the unilateral promise and became obligatory (*Grossman* v. *Schenker*, 206 N. Y. 466).

Whether plaintiff's written contract was terminated by defendant according to its provisions, whether it was modified by Brown or a new contract was made by him and he had authority to bind the defendant thereby, what the terms of any such modification or new contract were, what the contract between Triangle and the defendant actually was and whether it was breached by defendant were questions of fact for the jury upon the record now presented (*Ehrenworth* v. *Stuhmer & Co.*, 229 N. Y. 210). Upon the determination of those questions depended the right of plaintiff to recover and the scope of his recovery. We take the record as we now find it and do not attempt to limit or define the questions of fact that may arise upon a retrial of the case. Since the various causes of action and items of

recovery are not separable, the conclusion reached requires a new trial of the whole case.

The judgments should be reversed and a new trial granted, with costs to the appellant in all courts to abide the event.

LOUGHRAN, FINCH, LEWIS, CONWAY and DESMOND, JJ., concur; LEHMAN, Ch. J., concurs in result.

Judgments reversed, etc.