Burke, J. (dissenting).
We dissent and vote to reverse. Upon this dismissal of the complaint we are bound to view the evidence in the light most favorable to the plaintiff and give him the benefit of every reasonable inference (see Flamer v. City of Yonkers, 309 N. Y. 114) in order to determine whether under any view of the facts the plaintiff’s proof established his right to recover damages for breach of contract.
Thus viewed, the record clearly discloses at least the creation of a unilateral contract, i.e., a promise for an act, which became absolutely binding upon the final acceptance by the defendants. In any event the evidence falls clearly within the rule that ‘ ‘ Apart from the statutes validating past consideration for a written promise expressed in the writing * * * where an act is done by one person upon the express or implied request, of another, under such circumstances that the law implies a promise to pay therefor, and a promise is made after the rendition of such a service, the promise is generally held to be valid,, being supported by what is often called ‘ a past or executed consideration. ’ ” (9 N. Y. Jur., Contracts, § 105, p. 634; Pershall v. Elliott, 249 N. Y. 183.)
‘1 The law has outgrown its primitive stage of formalism when the precise word was the sovereign talisman, and every slip was fatal.” (Wood v. Buff-Gordon, 222 N. Y. 88, 91.) A contract may be implied from the facts and circumstances of the trans- *397 action; and the intention of the parties ascertained from their conduct as well as their expression. (Wells v. Mann, 45 N. Y. 327.) The implication of their deportment and declarations may be just as vital as the written or oral word itself (Grossman v. Schenker, 206 N. Y. 466, 469) and obviously just as binding (Ahern v. South Buffalo Ry. Co., 303 N. Y. 545, affd. 344 U. S. 367).
Plaintiff’s complaint alleges in substance a contract whereby defendants promised to buy insurance policies through plaintiff if he would devise a corporate life insurance plan for them and other stockholders of a certain closely held corporation; that said plan was devised and accepted, but the insurance was written through an employee of the corporation who was made an insurance agent for that sole purpose.
The evidence discloses that in November of 1955 Bichard Freydberg requested that plaintiff work up a plan to solve their corporate insurance problem. Plaintiff, in the months following, prepared various plans with supporting work sheets and computations and had a number of conferences with Schwartz, the corporate comptroller. In April of 1956 he was informed by Bichard Freydberg that it had been suggested that a consultant be called in to make recommendations. However, plaintiff was assured that his plan was almost certain to be approved; that the consultant did not sell insurance and would, therefore, be paid a fee only; and that “ whatever he recommends, you will write the business ”.
Subsequent to this consultation a new plan was temporarily adopted, later rejected, and, upon the reacceptance of plaintiff’s plan, physical examinations were arranged. However, before this progressed very far, defendants decided to consult another expert. Bichard Freydberg told plaintiff at this time: “We are going to retain a man who is not an insurance man, who will not sell life insurance. I think your plan is good but if he doesn’t think your plan is good and convinces us that your plan is no good, we are buying the insurance from you; so don’t worry about it.” (Emphasis supplied.)
Subsequent to this latter consultation plaintiff’s plan was adopted without change or modification. However, following that meeting plaintiff was informed that, although his plan was accepted, he would not write the business. He was offered instead a comparatively small fee. The consultant apparently *398 advised, and the defendants adopted the recommendation, that Schwarts, the corporate comptroller, be made an insurance agent and the policies obtained through him.
Under these circumstances not only do we find no difficulty, but we find it quite equitable, to at least imply a promise (see Allegheny Coll. v. National Chautauqua County Bank, 246 N. Y. 369) that the insurance be obtained through plaintiff. The implication of a promise is not only evident from the initial request to act, but also from the later assurances, and again by the final acceptance of the plan devised.
Defendants place undue emphasis upon the fact that defendants were under no obligation to accept plaintiff’s first proposal early in 1956. Although the general rule mandates mutuality of obligation for a contract to be enforcible (Schlegel Mfg. Co. v. Cooper’s Glue Factory, 231 N. Y. 459), it is certainly not an absolute requirement. Mutuality is merely one of the forms of consideration, the indispensable element without which a contract cannot ordinarily exist. (Justice v. Lang, 42 N. Y. 493.) “ For there are many valid contracts not mutually binding at the time when; as where A says to B, if you will furnish goods to C I will pay for them, B is not bound to furnish them, but if he does he may recover on the promise ”. (L’Amoreux v. Gould, 7 N. Y. 349, 351.) This latter type is characterized as a unilateral contract, and defined as one in which there is a promise, the consideration exacted .therefor being an act rather than a promise (De Cicco v. Schweiser, 221 N. Y. 431). The promise, though in a sense void when made for want of mutuality, becomes binding on a performance of that in consideration of which it was made, (Willetts v. Sun Mut. Ins. Co., 45 N. Y. 45.) For example, in the case at bar, the act is an insurance plan which would solve the corporate and defendants’ problem. Although this may have been a somewhat vague goal in its inception, it became quite definite and enforcible by defendants’ conceded acceptance of the plan proposed (1 Williston, Contracts [3d ed.], §§ 49, 106).
Therefore, the performance by plaintiff (i.e., a plan which was acceptable) is the consideration which relates back to the promise (at least implied, if not express) which becomes a binding obligation upon defendants. (Hedeman v. Fairbanks, Morse & Co., 286 N. Y. 240; Rubin v. Dairymen’s League Co-op. Assn., 284 N. Y. 32; Willetts v. Sun Mut. Ins. Co., supra.)
*399 Respondents’ additional reliance upon subdivision 1 of- section 129 of the Insurance Law is also without merit. That section provides that: "1. No insurance broker shall have any right to compensation, other than commissions deductible from premiums on insurance policies or contracts, from any insured or prospective insured for or on account of the negotiation or procurement of, or other services in connection with, any contract of insurance made or negotiated in this state * * * unless such right to compensation is based upon a written memorandum, signed by the party to be charged, and specifying or clearly defining the amount or extent of such compensation.” (Emphasis added.)
We find this section applicable solely to insurance brokers, as distinguished from insurance agents. Article 6 of the Insurance Law clearly defines and distinguishes these categories (see § 111, subd. 2; §§ 121,129 as to brokers; and § 110, subds. 1, 3; §§ 113, 114, subd. 2, par. [a]; § 115 as to agents), and explains exactly what the terms do, as well as what they do not, include. For example, the broker is considered an agent of the insured, and cannot sell life insurance, whereas an agent is the representative of the insurer and, of course, can sell life insurance. A perusal of this article will indicate that the Legislature was quite careful in its inclusion and exclusion of the distinct terms in the titles as well as the text of the numbered sections.
In any event, even if this section did include agents, it would not be applicable here since the consideration of the oral contract was merely a promise to buy insurance. It in no way included additional “ compensation, other than commissions * * * from any insured".
It is our opinion that the proof justified a submission of the facts to the jury (Stubbs v. City of Rochester, 226 N. Y. 516, 527).
Accordingly, the judgment should be reversed and a new trial granted.
Chief Judge Desmond and Judges Fuld and Van Voorhts concur with Judge Dye; Judge Burke dissents in an opinion in which Judges Froessel and Foster concur.
Judgment affirmed.