*614 OPINION OF THE COURT
Alice Schlesinger, J.
This is an action for damages based on the claim that defendants performed an autopsy on Edith Rotholz over the objection of her brother, plaintiff Fred Rotholz.
On December 22, 1989 Edith Rotholz was injured when she was hit by a truck making a right turn. Ms. Rotholz was taken to Lenox Hill Hospital. Four days later, on December 26, 1989 at 10:35 a.m., Ms. Rotholz passed away.
Ms. Rotholz and her family are Orthodox Jews. Their religious beliefs prohibit the desecration of a body after death. Fred Rotholz, when asked by a physician for permission to conduct an autopsy, refused, stating that he did not want the body "touched.”
Unbeknownst to Mr. Rotholz, less than 12 hours after the death, Lenox Hill Hospital on December 26, 1989 at 9:57 p.m. notified the office of the Chief Medical Examiner (the Medical Examiner) of Ms. Rotholz’s demise. Lenox Hill Hospital failed to inform the Medical Examiner that Ms. Rotholz’s family had raised an objection to the performance of an autopsy. At 10:17 p.m. the Medical Examiner picked up Ms. Rotholz’s body. The following day, at 2:10 p.m., the Medical Examiner performed the autopsy.
After the autopsy was performed, Ms. Rotholz’s niece came to the Medical Examiner’s office to identify the body. She reiterated Mr. Rotholz’s objection to the autopsy, but it was too late.
Plaintiffs are moving for summary judgment.
Plaintiffs contend that defendants violated Public Health Law § 4210-c which places limitations on the performance of autopsies where objections are made on religious grounds. Plaintiffs assert that the defendants breached section 4210-c (4) by failing to give notice that the autopsy was going to be performed by the Medical Examiner. Plaintiffs maintain that the City of New York (City) was liable for failure to wait 48 hours before performing the autopsy, as required by section 4210-c (4). Additionally, plaintiffs argue that in notifying and releasing the body to the Medical Examiner, Lenox Hill Hospital was acting as an agent of the City.
Both defendants oppose summary judgment and cross-move for the same relief.
Lenox Hill Hospital contends that it cannot be held liable *615 because the autopsy was performed by the Medical Examiner. The hospital argues that authorization for the autopsy was not discussed with the decedent’s family based on its written policy not to do so where the Medical Examiner takes responsibility for an autopsy. Further, it maintains that notification and release of the body to the Medical Examiner was mandated by section 17-203 of the Administrative Code of the City of New York and section 557 of the New York City Charter.
The City asserts that in order to be held liable it must have had actual or constructive notice of the objection to the autopsy. Here it had neither. It was not on actual notice because the hospital never informed the Medical Examiner that the family had an objection. Since it was not on notice of the objection there was no statutory requirement to wait 48 hours prior to conducting the autopsy or to put the family on notice that an autopsy was going to be performed.
The City also contends that the autopsy was appropriately performed pursuant to section 17-203 of the Administrative Code which permits autopsies where the death is related to casualty or criminal activity.
In 1983 the Legislature passed section 4210-c of the Public Health Law which absent a compelling public necessity prohibits an autopsy where such a procedure is antithetical to the religious beliefs of the decedent.
Section 4210-c (1) provides as follows: "Notwithstanding any other provision of law, in the absence of a compelling public necessity, no dissection or autopsy shall be performed over the objection of a surviving relative or friend of the deceased that such procedure is contrary to the religious belief of the decedent, or, if there is otherwise reason to believe that a dissection or autopsy is contrary to the decedent’s religious beliefs.”
Subdivision (2) defines "compelling public necessity”:
"(i) that the dissection or autopsy is essential to the conduct of a criminal investigation of a homicide, as defined by section 125.00 of the penal law, of which the decedent is the victim, or
"(ii) that discovery of the cause of death is necessary to meet an immediate and substantial threat to the public health and that dissection or autopsy is essential to ascertain the cause of death”.
Subdivision (4) provides in relevant part: "no dissection or autopsy shall be performed over the objection of a surviving relative or friend that such autopsy is contrary to the reli *616 gious beliefs of the deceased, or where there is otherwise reason to believe that a dissection or autopsy is contrary to the decedent’s religious beliefs, until notice thereof is given to the next of kin or friend as defined herein, or until forty-eight hours have elapsed, whichever is greater, to permit an objecting party to institute legal proceedings to determine the propriety of such dissection or autopsy”.
The court’s research has not revealed case law interpreting Public Health Law § 4210-c. Nor have the parties cited any relevant cases.
One cardinal rule of statutory interpretation is that absent ambiguity, legislative intent is to be ascertained from the words and language used in the statute (McKinney’s Cons Laws of NY, Book 1, Statutes §92). The court may not disregard the plain words of a statute and each word is to be given its appropriate meaning (McKinney’s Cons Laws of NY, Book 1, Statutes §94). All parts of an act must be read together to determine legislative intent (McKinney’s Cons Laws of NY, Book 1, Statutes § 97).
Section 4210-c clearly requires an objection to the performance of an autopsy. The objection can take two forms. First, an explicit objection by a family member or friend. Second, where it can be construed from the circumstances that there would have been an objection, or as the statute provides, "reason to believe that a dissection or autopsy is contrary to the decedent’s religious beliefs”.* (Public Health Law § 4210-c [1], M.)
Section 4210-c (4) does refer to a 48-hour period. However this phrase must be read in relation with the earlier phrase found in subdivision (4) that "no * * * autopsy shall be performed over the objection of a surviving relative or friend”. Thus, the 48-hour time period is triggered once there is an objection. The purpose of the waiting period is not as plaintiffs maintain to allow a timely objection but rather "to permit an objecting party to institute legal proceedings to determine the propriety of such dissection or autopsy” (Public Health Law § 4210-c [4]). Similarly, the purpose of the notice requirement is to permit the family to move for injunctive relief.
*617 This interpretation is consistent with subdivision (5) of section 4210-c which provides that where a "coroner or medical examiner shall deem it necessary to perform an autopsy over the objection of a surviving relative or friend * * * he may institute a special proceeding * * * for an order authorizing such autopsy.” Again, where the Medical Examiner is on notice of the objection he or she can seek judicial permission to conduct an autopsy.
Had the Legislature intended a 48-hour waiting period for the Medical Examiner it could have explicitly provided for such a period as it did in the case of autopsies performed by hospitals.
Section 4214 relates expressly to autopsies performed by order of hospital authorities. The section states as follows: "In no case shall an autopsy or dissection be performed upon any body within forty-eight hours after death, unless a written consent or directive therefor has been received from the person or persons legally entitled to consent to or order such autopsy or dissection.”
Having found that the entity performing the autopsy must be on notice of the objection, which if any, party is entitled to summary judgment?
First, it must be noted that Mr. Rotholz’s sworn assertion that he objected to the autopsy goes unchallenged by Lenox Hill Hospital.
While it is true that Lenox Hill did not perform the autopsy, section 4210-a of the Public Health Law provides as follows: "A person who makes, or causes or procures to be made, any dissection of the body of a human being, except by authority of law, or in pursuance of a permission given by the deceased, is guilty of a misdemeanor.”
In Darcy v Presbyterian Hosp. (202 NY 259 [1911]), the Court of Appeals citing the above provision (then Penal Law § 2214) held that the defendant hospital which refused to turn over the body of plaintiff’s son to plaintiff, and instead over her objection caused a New York City coroner to perform an autopsy may be held liable for damages.
Section 4210-a must be read in conjunction with section 4210-c which places limitations on autopsies. Thus, although Lenox Hill Hospital did not actually perform the autopsy, it may be liable for causing or procuring the performance of an autopsy that is not authorized by law.
Section 4210-c (1) permits autopsies over objection only *618 where there is compelling public necessity. In the instant matter, as a matter of law compelling public necessity has not been shown. While there is a suggestion that Ms. Rotholz’s traffic accident gave rise to the possibility of a criminal prosecution, there is no support for this in the record. The police report indicates that the truck made a right on to Broadway, Ms. Rotholz started to cross the street and was struck by the rear end of the trailer. Four days later she died. Nor has either defendant supplied any documents from the District Attorney or other law enforcement agency that any criminal investigation was conducted or even intended. Therefore, it cannot be said that the autopsy was essential to conducting a criminal investigation of a homicide.
The fact that section 17-201 of the Administrative Code and section 557 (f) of the New York City Charter place an affirmative duty on Lenox Hill Hospital to report deaths caused "from criminal violence, by casualty, by suicide, suddenly when in apparent health, when unattended by a physician, in a correctional facility, or in any suspicious or unusual manner” does not shield Lenox Hill Hospital from liability. The hospital must comply with Public Health Law pertaining to the performance of autopsies. For the same reason, Lenox Hill Hospital’s assertion that it observed its internal rules and regulations relating to autopsies is of no consequence.
For the reasons stated above, the court finds that Lenox Hill Hospital, by failing to inform the Medical Examiner’s office of plaintiffs objection to performance of an autopsy caused or procured an unauthorized autopsy on the body of Edith Rotholz.
Therefore, plaintiffs’ motion for summary judgment against defendant Lenox Hill Hospital is granted and Lenox Hill Hospital’s cross motion for the same relief is denied.
As noted above, one argument plaintiffs advance in support of summary judgment against the City is that Lenox Hill Hospital was acting as an agent of the City.
"An agency relationship is created as the result of conduct by the parties manifesting that one of them is willing for the other to act for him subject to his control, and that the other consents so to act” (2 NY Jur 2d, Agency, § 18, at 480). This relationship may be "implied from the words and conduct of the parties construed in the light of all the surrounding circumstances, provided the construction is natural and reasonable and the existence of the agency is based upon facts for which the principal is responsible” (id., § 22, at 482).
*619 Lenox Hill Hospital was obligated pursuant to the Administrative Code and the City Charter to notify and to release the body to the Medical Examiner. At the time of the release, Lenox Hill Hospital filled out a form prepared by the City which documented the particulars concerning the death. Under these circumstances, one can argue that Lenox Hill Hospital, when it notified and released the body to the Medical Examiner, was acting under the direction and control of the City.
Whether the City exercised a sufficient degree of control over Lenox Hill Hospital is open to doubt. As was stated in Garcia v Bonilla (51 AD2d 897 [1st Dept 1976]): " 'If the question of agency is not open to doubt, it is one for the court. But where no written authority of the agent has been proven, questions of agency and of its nature and scope * * * are questions of fact to be submitted to the jury under proper instructions by the court (Western Transportation Co. v. Hawley, 1 Daly, 327; Bingham v. Harris, 10 Daly, 522 affd., 97 N. Y. 626; Merkel v. Lazard, 114 App. Div. 25; Lilienthal v. German American Brewing Co., 121 App. Div. 628.)’ (Hedeman v. Fairbanks, Morse & Co., 286 N.Y. 240, 248-249.)”.
Accordingly, plaintiffs motion for summary judgment and defendant City’s cross motion for summary judgment are denied.

 An example of this latter objection can be gleaned from the events surrounding the assassination of Rabbi Meyer Kahane. The Medical Examiner chose not to conduct an autopsy because it was understood that his family would object to the procedure. (Counsel for the plaintiffs cites this example in his brief.)