Juseinoski v New York Hosp. Med. Ctr. of Queens (2004 NY Slip Op 50441(U))

[*1]

Juseinoski v New York Hosp. Med. Ctr. of Queens

2004 NY Slip Op 50441(U)

Decided on May 13, 2004

Supreme Court, Kings County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on May 13, 2004

Supreme Court, Kings County
Lirjie Juseinoski, et al., Plaintiffs,
against
New York Hospital Medical Center of Queens , et ano.., Defendants.
28516/98

Lawrence Knipel, J.
Upon the foregoing papers, plaintiffs, Lirije Juseinoski, Ali Juseinoski, Ferat Juseinoski, Qovser Juseinoski Coku and Flutra Juseinoski Kaja (collectively, the Juseinoskis) move, in effect, pursuant to CPLR 3212, for partial summary judgment on the issue of[*2] liability against defendants New York Hospital Medical Center of Queens (NYHMCQ) and Dr. Kenneth Sha.[FN1]
Background
This action to recover damages for emotional injuries stems from an allegedly unauthorized autopsy performed on September 1, 1996 following the death of Elmaz Juseinoski, a 47 year-old cleaning company supervisor who had passed out at work at the United States Open tennis stadium in Queens. Dr. Sha, a part-time emergency room attending physician at NYHMCQ, where emergency workers brought Mr. Juseinoski via ambulance, unsuccessfully attempted to revive him through Advanced Cardiac Life Support (ACLS) efforts. Mr. Juseinoski remained asystole (i.e., in cardiac standstill) throughout the attempted resuscitation and the Notice of Death, authored by Dr. Sha, shows cardiac arrest as the cause of death on September 1, 1996 at 2:15 AM.
Juseinoski family members, alerted to Mr. Juseinoski's hospitalization, arrived at the hospital about 30 minutes later, around 2:45 AM. They then learned about his death and notified hospital personnel of both their Muslim faith and their desire to take the body to a mosque. They received instructions to return at 8:00 AM, but were told upon returning at that time that NYHMCQ no longer held the body. The New York City Medical Examiner's Office, which had been notified of Mr. Juseinoski's death by Dr. Sha, had, in fact, acquired the body at 7:00 AM, according to the Hospital Release of Body Slip. Hospital staff advised the family members to contact the Medical Examiner's Office but an autopsy occurred at 2:00 PM that day before the family members actually received the body.
This litigation subsequently ensued and plaintiffs argue that NYHMCQ and Dr. Sha, as its agent, caused and bear responsibility for the unauthorized autopsy even without a specific family objection to an autopsy. They claim, in essence, that NYHMCQ failed to fulfill an affirmative duty to notify them that an autopsy would occur herein.
Defendants respond that no surviving relative or friend made any religious objection to an autopsy, that no reason existed to believe that an autopsy or dissection contravened Elmaz Juseinoski's religious beliefs, that the hospital followed its rules and regulations, which then required no inquiry about consent or objection to an autopsy when referral occurred to the City's Medical Examiner's Office, and that no legal requirement exists for a hospital or its physicians to obtain consent for an autopsy that they do not perform or to provide notice of an autopsy by someone else. 
Discussion
Both sides recognize that Public Health Law § 4214 (1) limits the right of a hospital and its physicians to perform an autopsy and imposes an affirmative duty on them to seek[*3] consent before a hospital-ordered autopsy occurs.[FN2] Performing an unauthorized autopsy or an autopsy without appropriate permission, in fact, constitutes a misdemeanor under Public Health Law § 4210-a.[FN3] Failing to obtain written consent for a hospital-ordered autopsy separately subjects a hospital and its physicians to civil liability (Bambrick v Booth Memorial Medical Center, 190 AD2d 646).
Here, defendants performed no autopsy and contend that they simply released Elmaz Juseinoski's body to the Medical Examiner's Office following statutorily-mandated notice (under New York City Administrative Code § 17-201 [FN4] and New York City Charter § 557 [f][FN5]) to that office. Failing to notify the chief medical examiner's office, defendants stress, constitutes a misdemeanor under New York City Administrative Code, § 17-201.[FN6] In addition, Public Health Law § 4210 allows the New York City Chief Medical Examiner's Office to perform an autopsy.[FN7][*4]
Case law has exonerated the New York County Medical Examiner from civil liability where, as here, the Medical Examiner had no reason "to believe that an autopsy is contrary to the decedent's religious beliefs (see, Rotholz v City of New York, 151 Misc 2d 613, 616-617)" (Harris-Cunningham v Medical Examiner of New York County, 261 AD2d 285-286). That last decision, in requiring the Medical Examiner's knowledge of decedent's religious beliefs or an autopsy-objection notice to the Medical Examiner, "reject[ed the] argument that under Public Health Law § 4210-c (1),[[FN8]] the Medical Examiner was under an affirmative duty to seek the consent of a surviving family member or friend, and that absent such consent, or 'compelling public necessity', could not perform the autopsy" (id.; see also Banks v United Hospital, 275 AD2d 623, 624). Hence, "[t]he burden is upon a decedent's next of kin to convey a religious objection to the medical examiner's office" (Dick v City of New York, Misc 2d , 2002 NY Slip Op 50482 *3). 
However, the Harris-Cunningham decision crucially distinguishes "Public Health Law § 4214, which imposes an affirmative duty on hospitals to seek consent before performing autopsies . . ." (261 AD2d at 286). Such duty also seems applicable under prevailing case law where a hospital, though not performing the autopsy, causes the autopsy, as here, by transferring the body to the Chief Medical Examiner's Office. Prior decisions have already found that a hospital may be held liable as causing or procuring an unauthorized autopsy where known objections to an autopsy existed and the hospital nonetheless released the body to a medical examiner who thereafter performed an autopsy (Rotholz v City of New York, 151 Misc 2d 613), or otherwise caused or enabled a coroner to perform an autopsy (Darcy v Presbyterian Hospital in City of New York, 202 NY 259, rearg denied 203 NY 547). Liability plus punitive damages resulted where a funeral home which knew generally that an autopsy violated a decedent's religious beliefs still instigated the autopsy to avoid rescheduling a funeral (thus itself transporting the body to the Medical Examiner's office) (Liberman v Riverside Memorial Chapel, Inc., 225 AD2d 283, 287-292).
Here, defendants attempt to avoid these rulings by contending (a) that they received no specific objection to an autopsy, which plaintiffs implicitly acknowledge, and (b) that knowing only about the family's Muslim faith and the desire to take the body to a mosque provided insufficient information for them to believe that an autopsy conflicted with the decedent's and the family's religious beliefs. The autopsy in this case, though, occurred on September 1, 1996 at 2:00 PM, less than 12 hours after Elmaz Juseinoski's death at 2:15 AM that same date. This death therefore occurred well within the applicable 48-hour period specified in Public Health Law § 4214 (1) thus requiring a next of kin's written consent. The[*5] affirmative duty to pursue consent imposed by Public Health Law § 4214 (1) coupled with the quickly-occurring autopsy following the death in this case, in other words, moots defendants' lack of knowledge defense.
In this case, as in Bambrick, requiring written consent for an autopsy where the hospital, albeit mandatorily, will release the decedent's body to the medical examiner [FN9] implements legislative intent "to afford relatives greater control over the disposition of the remains of their decedents. Such an intent is clearly consistent with the body of statutory and decisional law which places greater emphasis on the rights of family members to receive the bodies of their loved ones in as undisturbed a condition as possible . . ." (Bambrick, 190 AD2d at 648). Accepting the defendants' position that releasing a decedent's body to a medical examiner short-circuits the scope of Public Health Law § 4214 (1) and negates civil liability for the resulting autopsy means, as recognized in the Bambrick decision, that "the statute would be rendered meaningless and could be disregarded with impunity" (id.).
Public Health Law § 4214 (1), like Public Health Law § 4210-c honoring religious objections, "was not intended to provide a 'loophole' for an unauthorized autopsy" (Kellogg v Office of the Chief Medical Examiner of the City of New York, 189 Misc 2d 756, 769). This court, like the Appellate Division, Second Department in the Bambrick decision, "decline[s] to adopt [a 'loophole' or no liability] interpretation, inasmuch as 'the court must assume that . . . an enforceable result was intended by the statute . . . . [and a] construction which would render a statute ineffective must be avoided' (McKinney's Cons Laws of NY, Book 1, Statutes § 144, at 291-292)" (Bambrick, 190 AD2d at 648).
 Accordingly, plaintiffs' motion, in effect, for summary judgment on the issue of liability is granted.
The foregoing constitutes the decision and order of this court.
E N T E R,
J. S. C.
Footnotes

Footnote 1:By order dated January 9, 2004, this court granted the motion for summary judgment of the Office of [the] Chief Medical Examiner of the City of New York, Department of Health of the City of New York and City of New York, and dismissed the third-party complaint asserted against them. 

Footnote 2:That provision pertinently provides that: "[t]he director or person having lawful control and management of any hospital in which a person has died may order the performance of an autopsy upon the body of such deceased person, after first giving notice of the death to the next of kin of such person, unless the body is claimed or objection is made to such autopsy by the next of kin within forty-eight hours after death, or within twenty-four hours after such notice of death. In no case shall an autopsy or dissection be performed upon any body within forty-eight hours after death, unless a written consent or directive therefor has been received from the person or persons legally entitled to consent to or to order such autopsy or dissection." (Emphasis added).

Footnote 3:That provision pertinently provides that: "[a] person who makes, or causes or procures to be made, any dissection of the body of a human being, except by authority of law, or in pursuance of a permission given by the deceased, is guilty of a misdemeanor." 

Footnote 4:That provision pertinently provides that: "[i]t shall be the duty of any citizen who becomes aware of the death of any person, occurring under the circumstances described in subdivision (f) of section five hundred fifty-seven of the charter, to report such death forthwith to the office of the chief medical examiner . . ."

Footnote 5:That provision pertinently provides that: "[t]he chief medical examiner shall have such powers and duties as may be provided by law in respect to bodies of persons dying . . . suddenly when in apparent health . . ."

Footnote 6:That provision pertinently provides that: "[a]ny person who shall wilfully neglect or refuse to report such death . . . shall be guilty of a misdemeanor."

Footnote 7:That provision pertinently provides that: "[t]he right to dissect the body of a deceased person exists in the following cases: . . . 2. When the dissection is performed by or at the direction of . . . (c) a medical examiner of a county . . ."

Footnote 8:That provision provides that: "[n]otwithstanding any other provision of law, in the absence of a compelling public necessity, no dissection or autopsy shall be performed over the objection of a surviving relative or friend of the deceased that such procedure is contrary to the religious belief of the decedent, or, if there is otherwise reason to believe that a dissection or autopsy is contrary to the decedent's religious beliefs." 

Footnote 9:Fulfilling a hospital's affirmative duty to seek such written consent may require briefly delaying release of a decedent's body to a medical examiner lest, as in this case, a quickly-occurring autopsy defeats the whole purpose of seeking such consent.