DE FOREST KEYES et al., as Executors of MARQUIS L.
KEYES, Deceased, Appellants, v. METROPOLITAN TRUST
COMPANY OF THE CITY OF NEW YORK, as Administrator
of the Estate of ALEXANDER McDONALD, Deceased,
Respondent.

Power of attorney — purpose thereof and extent of authority
conferred thereby — meaning and application of provision
authorizing attorney in fact "to make, sign * * * bills of
exchange, promissory notes and other evidences of indebtedness."

1. The purpose of a written power of attorney is not to define the
authority of the agent, as between himself and his principal, but to
evidence the authority of the agent to third parties with whom the
agent deals.

2. A power of attorney containing authority from the maker to
his attorney in fact "to make, sign, execute and deliver for me and
in my name, all bills of exchange, promissory notes and other evi-
dences of indebtedness," not limited by other provisions, author-
izes the attorney to borrow money or purchase property for his
principal, and to give the latter's promissory note in payment
thereof. The use of the words "other evidences of indebtedness"
indicates, if anything, an intention to broaden, rather than to
restrict the power. (*Miles* v. *Stallo*, 219 N. Y. 669, followed.)

*Keyes* v. *Metropolitan Trust Co.*, 169 App. Div. 765, reversed.

(Argued February 6, 1917; decided February 27, 1917.)

APPEAL from an order of the Appellate Division of the
Supreme Court in the third judicial department, entered
November 9, 1915, reversing a judgment in favor of plain-
tiff entered upon a decision of the court on trial at Spe-
cial Term and granting a new trial.

The nature of the action and the facts, so far as mate-
rial, are stated in the opinion.

*J. F. Thompson* for appellants. The power of attorney
authorized Stallo to issue the note. (*Watson* v. *Cleve-
land*, 21 Conn. 538; *Schofield* v. *Warren*, 13 Misc. Rep.
209; *Morris* v. *Hofferberth*, 81 App. Div. 512; 180 N. Y.
545; *Dollfus* v. *Frosch*, 1 Den. 367; Meechem on Agency,

§ 998; *Wimberly* v. *Windham,* 104 Ala. 409; Clark on Agency, 519; *Fitzbaugh* v. *Spunangle,* 118 Iowa, 341; Story on Agency, § 17; *Hallady* v. *Underwood,* 90 Ill. App. 130; *Keith* v. *Herschberg,* 48 Ark. 145.)

*William F. Taylor* and *Edwin De T. Bechtel* for respondent. The power of attorney held by Edmund K. Stallo did not authorize him to purchase for McDonald stock of the First National Bank of Oneonta or to give McDonald's note in payment for such stock. (*Lesem* v. *M. L. Ins. Co.,* 164 App. Div. 507; *F. Nat. Bank* v. *Bean,* 141 Wis. 476; *Jacobs* v. *Morris,* L. R. [1 Ch. 1902] 816; *Bryant, Powers. & Brant* v. *La Banque,* L. R. [App. Cas. 1893] 170; *Craighead* v. *Peterson,* 72 N. Y. 279; *Nash* v. *Mitchell,* 71 N. Y. 199.)

*Nash Rockwood* and *Charles A. Winter* for next of kin of Alexander McDonald, deceased. There was no authority to make the note in suit. (*Taylor* v. *Harlow,* 11 Barb. 232; *Lahn* v. *Sullivan,* 116 App. Div. 669; *Nixon* v. *Hyserott,* 5 Johns. 58; *Jacoby & Co.* v. *Payson,* 91 Hun, 480; *Batty* v. *Carswell,* 2 Johns. 48; *Rossiter* v. *Rossiter,* 8 Wend. 494; *Lesem* v. *M. L. Ins. Co.,* 164 App. Div. 507.)

McLAUGHLIN, J. Action on a promissory note for $20,000, payable to the plaintiffs' testator and signed in the name of Alexander McDonald, defendant's intestate, by Edmund K. Stallo, his attorney in fact. The execution and delivery of the note in that form by Stallo in part payment of the purchase price of 125 shares of the stock of the First National Bank of Oneonta were admitted, and the only question to be considered was whether Stallo had authority from McDonald to make the note. In signing McDonald's name, Stallo purported to act under a power or powers of attorney given to him by McDonald in 1903 and 1907, respectively. The trial court held that these instruments conferred power upon Stallo to make the note in question and directed judg-

ment for the plaintiffs. The defendant appealed from this judgment to the Appellate Division, third department, which held that the powers of attorney did not confer such authority upon Stallo and ordered that the judgment be reversed and a new trial granted. The plaintiffs appeal to this court, giving the usual stipulation.

The power given by McDonald to Stallo in 1907, which was substantially the same as that given in 1903, was, " To collect all debts due or to become due to me; to collect and receive all dividends on stock of incorporated companies owned or held by me; to collect and receive all rents due or accruing to me    *    *    *    and to give valid receipts and acquittances for all money received by him for me and in my behalf; to make, sign, execute and deliver for me and in my name, all bills of exchange, promissory notes and other evidences of indebtedness; to sell, transfer and assign all personal property of whatever description which I own or to which I have any right or title; to vote as my proxy at all stockholders' meetings of companies and corporations in which I now own or may hereafter own stock or shares and to give valid proxies to such substitutes hereunder on my behalf as my said attorney in fact may select; to guarantee the payment of promissory notes, obligations and debts of any company in which I may be or become a stockholder, especially    *    *    *    and generally in the sale and management of my personal property and in other matters above mentioned to do and perform everything which I could do and perform if personally present."

The power thus given expressly conferred authority to sign promissory notes and it must be held, as it seems to me, to have authorized the execution of the note in question, unless such authority were limited by other provisions.

The court below held that since the powers of attorney did not expressly confer authority to purchase property without the direct knowledge of McDonald (as this stock

was) it did not authorize the giving of a note in payment, and that the express authority to execute and deliver bills of exchange and promissory notes, as limited by the words " other evidences of indebtedness " must refer to indebtedness existing at the time the powers were executed.

I am of the opinion, considering the evident purpose for which the powers of attorney were given, that this is too narrow a construction to be placed upon them. The term " other evidences of indebtedness" is commonly and generally used as a general description of instruments for the payment of money and it has never, so far as I am aware, been confined in any way to renewal instruments, that is, to instruments given to evidence an indebtedness already existing. Its use in the phrase "bills of exchange, promissory notes and other evidences of indebtedness " is very common and it certainly does not ordinarily have the effect of limiting the bills and notes to those given in renewal of a previously existing indebtedness. If the use of this phrase had been intended to limit the power to signing promissory notes in renewal of those theretofore given, then it would have been a very simple matter to have indicated such purpose by appropriate words. The use of the words " other evidences of indebtedness" indicates, if anything, an intention to broaden, rather than to restrict the power. If such intention existed, therefore, it must be found in other parts of the instrument. The powers of attorney gave Stallo authority to collect all income and moneys due and owing McDonald; to sell any and all of his personal property; and to take the entire *management* of his estate. This necessarily implied the power to invest the proceeds. To manage money means to employ or invest it. (*Watson* v. *Cleveland*, 21 Conn. 538.) If there were anything in the powers of attorney to indicate that McDonald contemplated the liquidation of his affairs by the conversion of all his personal property into cash, then

there might be some ground for holding that despite the express power given to sign promissory notes, Stallo was not authorized to contract new indebtedness. (*Rossiter v. Rossiter*, 8 Wend. 494.) But the existence of any such purpose is disproved by the terms of the powers of attorney which authorized Stallo to act as proxy at all stockholders' meetings of corporations "in which I now own or *may hereafter own* stock or shares" and to guarantee the payment of debts and obligations of any company "in which I may be or *become* a stockholder." These provisions clearly show that McDonald did not give the powers of attorney for the purpose of having Stallo convert his personal property into money; on the contrary, that he contemplated the possibility, at least, of thereafter acquiring stock in other corporations. The unlimited power of sale given to Stallo was not, therefore, for the purpose of converting the personal property into cash, but to generally manage McDonald's personal estate. If McDonald himself had purchased the stock for which the note in suit was given there could, it seems to me, be no question but that the powers of attorney would have given Stallo authority to sign the note for him. The stock was, in fact, purchased in McDonald's name, so that the consideration for the note moved directly to him. If it be held that the note is unenforceable against his estate, it must be solely upon the ground that the omission of any provision in the powers of attorney authorizing Stallo to purchase personal property had the effect of withholding from him authority to sign a promissory note in payment thereof. I do not think such omission can be held to have nullified or limited the express power previously granted.

In *Morris* v. *Hofferberth* (81 App. Div. 512; affd., 180 N. Y. 545) it was held, where plaintiff gave his agent authority to sell lumber, that the latter might indorse a check payable to the order of his principal, given in payment of lumber sold, and receive the cash on same.

16

The purpose of a written power of attorney is not to define the authority of the agent, as between himself and his principal, but to evidence the authority of the agent to third parties with whom the agent deals. In order to enable Stallo to sell property belonging to McDonald it was necessary that he should be able to prove to his vendees that he had authotrity to sell. But his authoriy to purchase property for McDonald was a matter which primarily concerned only McDonald and himself. If he purchased for cash it did not matter to his vendors whether he was acting for himself or McDonald. It was not necessary in that case for him to show any power of attorney, and, therefore, the omission to specify therein authority to purchase property is of little significance. If the property were not to be purchased for cash, it may well have been supposed that the authority to draw bills of exchange and promissory notes was enough, and that such authority was conferred for that very purpose. Third parties reading the powers of attorney would naturally be led to that conclusion. Certainly no reasonably prudent person would, after reading them, have any doubt on that subject.

But whether this be the correct view or not, it seems to me clear that a power of attorney to execute and deliver bills of exchange and promissory notes, as set forth in the instruments under' consideration, would authorize an attorney to borrow money or purchase property for his principal, giving the latter's promissory note in payment thereof.

This conclusion is sustained by *Miles* v. *Stallo* (219 N. Y. 669), recently decided by this court. There, a judgment against this defendant, upon a note also given for the purchase price of stock, signed by Stallo in McDonald's name, under the same powers of attorney here in question, was unanimously affirmed without opinion. The decision in that case is decisive of the present appeal.

This view renders it unnecessary to pass upon the ques-

tions raised as to the admissibility of Stallo's testimony referring to the conversation between him and McDonald regarding the purchase of the stock in question, or as to the admission in evidence of the inventory filed by Stallo as administrator of McDonald's estate.

The order appealed from, therefore, should be reversed and the judgment of the trial court affirmed, with costs to the appellants in all courts.

CHASE, COLLIN, CARDOZO and ANDREWS, JJ., concur; POUND, J., concurs in result; HISCOCK, Ch. J., not voting.

Order reversed, etc.