In the Matter of the Estate of JAMES T. ANYON, Deceased.

Surrogate's Court, New York County, June 13, 1930.

*Manning Stires* [*William J. Dawley* of counsel], for the petitioners.

*McNamara & Seymour*, for the respondent Empire Trust Company.

FOLEY, S. This is a proceeding to compel payment out of the estate of certain moneys claimed to be due the widow and daughter of the testator. It is brought by them pursuant to the provisions of section 217 of the Surrogate's Court Act. By reason of the fact that the widow is also the coexecutrix of the estate, it also involves the allowance by the surrogate of her demand as a personal claim against the estate. (Surr. Ct. Act, § 212.) The widow, Florence B. Anyon, under her revised demand, contends that there is due her the sum of $18,652.51. Ethel A. Hensel, the daughter, asks that the sum of $30,950.75 be awarded to her.

The coexecutor, the Empire Trust Company, has filed an answer to the petition and its counsel, with commendable zeal and thoroughness, has submitted all the available evidence bearing upon the issues between the estate and the claimants with a view to a determination by the surrogate of the rights of the parties and with due regard to the necessary protection to possible infants or incompetents who may be ultimately interested in the estate.

The will of the testator, as modified by the codicils, makes certain small bequests, directs the payment immediately after his death of $25,000 each to his wife and daughter, and places the remainder in trust for the lives of his two grandchildren with directions to pay the income during that period to his wife and daughter and to the survivor, with gifts over of the remainder to the two grandchildren or their issue under various specified contingencies. The

gross estate left by him, which passes under the will, amounts to approximately $565,000.

The facts are undisputed. It appears that James T. Anyon, the decedent, was an accountant of long experience and success in his profession. On January 15, 1920, he executed a trust deed to the Empire Trust Company and transferred to the trustee approximately $200,000 in securities. Under the instrument he was the sole beneficiary of the income. Upon the death of the settlor, the trustee was directed by the terms of the deed to pay one-half of the principal to each of the claimants. This deed was revoked, pursuant to section 23 of the Personal Property Law (added by Laws of 1909, chap. 247), by two deeds of revocation executed on August 20, 1923. Upon that date the decedent executed a new deed of trust conveying the securities then in the trust to the same trustee. Under that deed the trustee was directed to divide the fund into two equal parts. The income of the first half was directed to be paid to his wife during her life. Upon her death the principal was to be paid over to the persons designated in her will. Parallel provisions were made as to the second half of the fund for the benefit of the daughter, Ethel A. Hensel. It also appears that prior to the execution of the first deed, for a period of many years, Mr. Anyon had been accumulating securities for the benefit of his two dependents. The establishment, therefore, of the formal trust in 1920 was a continuation of this beneficial plan. From 1922 to the date of his death he maintained records, in his books, of the accounts of his wife and daughter in which were entered receipts of the income from the trustee and personal contributions made by him from other sources. Disbursements, consisting of expenditures for taxes, personal expenditures made for their benefit and other outlays, were set forth in the account. While Mr. Anyon was the life tenant of the trust and entitled to the income, it appears that at the time of the execution of the trust deed of 1920, Mrs. Anyon and Mrs. Hensel each executed a power of attorney authorizing the decedent " to collect and pay money from any trust fund or other source on my account, to receive and endorse checks, to make tax returns and all other things pertaining to these matters." As the settlor of the trust he had the power to assign the income to the two claimants or to give them the income from time to time as it accrued. (*Newton* v. *Hunt*, 134 App. Div. 325; affd., 201 N. Y. 599.) Subsequently, similar powers of attorney were executed in May, 1923, by the claimants to the decedent which, I hold, covered the income of the trust created by the deed of 1923. In reliance upon this authority the decedent continued to exercise the same control over the funds received by him as agent. At the time of the establishment of the 1923 trust,

new powers were executed. Their scope was limited to the receipt of income, but they were clearly intended to protect the trustee as to payments made to the decedent.

A picture is thus presented by this evidence of a considerate husband and indulgent father establishing and building up a fund for the support of his wife and child. The transactions were entirely donative on his part and the securities constituting the original trust fund were gifts by him. The inference is clear that complete power of collection of income, expenditure and reinvestment was conferred by the claimants upon the decedent as their agent. His good faith in the conduct of their transactions is unquestioned by them. There is no attack upon him for fraud or mismanagement. In this class of cases the very relationship between the parties and the confidence reposed in the parent or husband overcome any innocent informality in the handling of the accounts, and support the conclusion of good faith. The decedent's admissions in the entries, made under his direction, constitute evidence of the liability of the estate to the claimants. (*Miller* v. *Silverman*, 247 N. Y. 447; *Govin* v. *de Miranda*, 140 id. 474; *Matter of Brady*, 228 App. Div. 56, 60; *Matter of Valentine*, 122 Misc. 486.)

The total amount of income from the trusts received by the decedent as agent for the wife and child is undisputed. Certain issues, however, are raised by them as to items charged in the account against them. The trust company as coexecutor also questions certain items credited to them.

(1) The first issue involves the debit balance charged against the claimants on the books of the decedent as of the date of the termination of the first trust. I hold that this amount — $13,171.27 — as divided and allocated between the two claimants respectively, was properly charged by the decedent against them. This deficit represented in part the cost of additional securities purchased by the decedent and added to the trust principal for the benefit of his wife and daughter. It has been already stated from the course of dealing of the parties that the decedent had the widest and most comprehensive form of authority from the claimants in the handling of the funds. The question here is not between the agent or attorney in fact and third parties as to any technical limitation upon the scope of the powers contained in an instrument. " The purpose of a written power of attorney is not to define the authority of the agent as between himself and his principal, but to evidence the authority of the agent to third parties with whom the agent deals." (*Keyes* v. *Metropolitan Trust Co.*, 220 N. Y. 237, 242; *Miles* v. *Stallo*, 219 id. 669.) The additional securities which were purchased by him between 1920 and the execution of the new deed

in 1923 were, by expressed written acquiescence of the claimants, transferred into the new trust. This act, therefore, was a ratification of the power previously given and denotes acquiescence in the advantage which they would receive in the increased income and increased fund over which they had a power of disposition by will. I hold that the disbursements were made with the authority given to the decedent and that this debit balance was a proper charge against the claimants.

(2) A second question arises as to the right and authority of the decedent to debit the account after August 20, 1923, with the sum of $24,451.75. This amount was charged out of the income collected under the second trust deed. It represents cash transferred and the cost of securities transferred as additions to the principal of the fund. The transaction between the parties did not limit the contribution of securities to the principal of the trust from the donor alone, but transfers could have been and were properly made from securities purchased by the decedent out of income which accrued for the benefit of his wife and daughter. The objection to this item as a proper charge against the claimants is, therefore, overruled.

(3) The third major item in dispute involves a credit in favor of the wife and daughter of the sum of $25,474.54. The coexecutor raised the question as to the propriety of this credit. It represented income upon securities which were declared by the decedent to be held by him " temporarily " or for " safekeeping." These securities were not included in the trust principal. There is some evidence that he intended ultimately to transfer them to the trustee, but no valid, absolute conveyance has been proven. The appearance of this item on the books of the decedent, however, constituted an admission by the decedent of the right of the claimants to the specified income on the securities. (*Govin* v. *de Miranda,* 140 N. Y. 474; *Miller* v. *Silverman,* 247 id. 447.) This conclusion also applies to the smaller items credited by the decedent and derived from other sources.

In the face of this display of the bounty and generosity of the decedent, it would appear that the attempt of the claimants to take advantage of all credits in the account but to eliminate certain charges against them, is, to say the least, inconsistent. The contributions by Mr. Anyon from sources aside from the income of the trust exceeded the cost of the securities which were accumulated and transferred to the trust under the second issue discussed above.

If the parties do not desire to submit further evidence upon the disputed smaller items, the accounts between the decedent and each of the claimants will be settled in accordance with this decision

and a computation of the amounts due to the respective claimants may be submitted on notice and embodied in a proper decree. If a further hearing is necessary and further proof be required, a hearing will be set by the surrogate on the request of either party.

Proceed accordingly.