■ VIRGINIA GARCIA, as Administratrix of the Estate of GEORGE BON-ILLA, Deceased, Respondent, v HERALD TRIBUNE FRESH AIR FUND, INC., Appellant.—Order and judgment entered in the Supreme Court, Bronx County, on November 6 and November 12, 1974, respectively, permitting plaintiff to enter an interlocutory judgment of liability against defendant and directing an assessment of damages and the interlocutory judgment entered thereon, affirmed, with $60 costs and disbursements to respondent. In this negligence action to recover for personal injuries and wrongful death, the jury found (1) that a Mrs. LeClair, to whom the care of the 10-year-old decedent was entrusted, was acting as an agent of the defendant, and (2) that the defendant was negligent. The jury could not agree upon the dollar value of the damages sustained. The court treated the jury's findings as a verdict on liability in favor of plaintiff and against the defendant and set the case down for trial on the issue of damages. Contrary to appellant's claim, we find that the question of the principal-agency relationship was properly submitted to the jury and that its verdict is supported by, and not against the weight of, the evidence. It is well settled that a principal-agency relationship exists where one retains a degree of direction and control over another. Whether a sufficient degree of direction and control of Mrs. LeClair by the Fresh Air Fund existed sufficiently to constitute an agency relationship was properly submitted to the jury. "If the question of agency is not open to doubt, it is one for the court. But where no written authority of the agent has been proven, questions of agency and of its nature and scope * * * are questions of fact to be submitted to the jury under proper instructions by the court *(Western Transportation Co. v. Hawley,* 1 Daly, 327; *Bingham v. Harris,* 10 Daly, 522, affd., 97 N. Y. 626; *Merkel v. Lazard,* 114 App. Div. 25; *Lilienthal v. German American Brewing Co.,* 121 App. Div. 628; *Hedeman v Fairbanks, Morse & Co.,* 286 N.Y. 240, 248–249.)" Mrs. LeClair was given instructions by the defendant as to the manner in which children placed in her custody by it should be cared for; she was given safety instructions and directions as to swimming activities; she was told what to do in emergencies. Following these instructions, immediately upon

the happening of this tragedy, she contacted the fund whereupon she was advised not to divulge any information regarding the drowning to anyone but them, that they would take care of all legal matters and to keep in constant touch with them, which Mrs. LeClair did on many occasions. Further, the fund provided liability insurance coverage to her and told her they would and did take over complete control of the defense of any law suit. Thus, there is more than sufficient evidence to support the finding of agency. We see not the slightest resemblance between this case, where a 10-year-old child is entrusted by its mother to the Fresh Air Fund and *Dorkin v American Express Co.* (43 AD2d 877, affg 74 Misc 2d 673), cited by the dissent, in which a tourist was injured while traveling in Europe due to the negligence of a bus driver. American Express did not own or control the bus or its driver, nor did it exercise any control over the type of bus used or how or by whom it was operated. The factual contrast is too obvious for any further discussion. Additionally, we find that the trial court was justified in accepting the verdict on liability and setting the case down for an assessment of damages. It is well established that "The liability issue and the damage issue in an action * * * to recover for personal injuries or wrongful death * * * may be tried and determined separately." *(Mercado v City of New York,* 25 AD2d 75, 76.) Moreover, where there has been disagreement as to one or more of the issues submitted to the jury the court may, in its discretion, direct a retrial limited to such issues. The issues of agency and liability were fully and fairly tried. The jury unanimously resolved them against the defendant under proper instructions from the court. We see no reason to retry what has been set to rest by the verdict which finds the requisite support in the record. Concur—Stevens, P. J., Kupferman, Capozzoli and Nunez, JJ.; Silverman, J., dissents in the following memorandum: In my view the trial court erred in submitting to the jury the issue of whether Mrs. LeClair was an agent of defendant Herald Tribune Fresh Air Fund, Inc. In this case, Mrs. LeClair had a home in Massachusetts; she and her husband contacted a Mrs. Smith "Chairman of the Wellesley Friendly Towns" to have some children with them during the summer. Mrs. Smith informed defendant fund of this fact and the defendant arranged for the plaintiff's intestate, a 10-year-old boy, to stay at Mrs. LeClair's home for a week. Tragically, the boy was drowned on the first day of his visit while swimming. The trial court, as is quite common, used the term "agent" synonymously with the term "servant," the term which is used in the Restatement, Agency 2d to distinguish that relationship from an "independent contractor." (The Restatement uses the word "agent" to cover both a "servant," for whose torts causing physical harm the master or employer is liable to third persons, and an "independent contractor," to whom this rule does not apply.) The section 2 of the Restatement, Agency 2d defines the relationship as follows: "(2) A servant is an agent employed by a master to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the master. (3) An independent contractor is a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking. He may or may not be an agent." "Where one who performs work for another represents the will of that other, not only as to the result, but also as to the means by which the result is accomplished, he is not an independent contractor but an agent, and the relationship is one of agency when the employer reserves control and an interest in the performance of the work other than the finished product." *(Matter of Hartmann v*

*Tremaine,* 250 App Div 188, 192.) " 'He is to be deemed the master who has the supreme choice, control and direction of the servant, and whose will the servant represents, not merely in the ultimate result of his work but in all its details.' (Shearman & Redfield on the Law of Negligence * * *)," quoted with approval in *Irwin v Klein* (271 NY 477, 484). Defendant did not have the kind of control of the manner in which Mrs. LeClair took care of the boy that would make Mrs. LeClair defendant's servant or agent. It had no right to direct Mrs. LeClair as to what room the child should sleep in, what time he should go to bed, when he should have his meals and what they should consist of, where and when she could let him go swimming, etc. No doubt the master's control need not be exercised with the degree of detail that these examples suggest. But the right of control of the manner of perform-ance is essential. It is true that in this case Mrs. LeClair received a brochure of some kind; apparently it "gave warnings on safety, medical care and that type of thing." These are far from directions. And in any event neither the brochure nor a summary of it is in the record. In no sense was Mrs. LeClair a servant or employee of the defendant fund. The fund merely brought the child to Mrs. LeClair and left the child with Mrs. LeClair to stay with her in her home for a week. The boy was simply a guest in Mrs. LeClair's home, of which she was the mistress. Obviously, Mrs. LeClair's home was not a facility operated by defendant. Defendant's function with respect to placing children in the homes of people was essentially one of co-ordination, placement and helping the children's families meet the expenses of travel etc. In this respect defendant fund was legally in the same position as American Express Company, the travel agent in *Dorkin v American Express Co.* (43 AD2d 877, affg 74 Misc 2d 673). In that case, the plaintiff was on an American Express tour traveling in Europe; she was injured by negligence on the part of a bus driver; the tour bus was not owned or controlled by American Express but was retained by it to transport plaintiff and others in Europe; American Express did not exercise any control over the type of bus used or how it was operated. The court held as a matter of law that the owner of the tour bus was an independent contractor for whose torts American Express was not liable. Accord *Sacks v Loew's Theatres* (47 Misc 2d 854), where the travel agent was held not liable for torts of the employees of a hotel into which the travel agent had booked the plaintiff. Accordingly, as a matter of law, the trial court should have dismissed the claim that Mrs. LeClair was an agent or servant of defendant. Plaintiff also sought to hold defendant responsible on the theory enunciated in *Miles v R & M Appliance Sales* (26 NY2d 451), i.e., that even if Mrs. LeClair was an independent contractor, the circumstances were such that the boy's mother reasonably believed that what was being done was being done by the fund itself to the same extent as if the fund were acting through its own direct servants. It is unnecessary for us to pass on this contention at this time. The court submitted to the jury separate questions, as to liability on the agency theory and liability on the independent contractor—*Miles v R & M Appli-ance Sales* theory. The jury did not answer the latter question. The judg-ment should be reversed and a new trial ordered on the issue whether defendant is liable on the theory enunciated in the *Miles* case. [80 Misc 2d 970.]