■ Hotel Prince George Affiliates, Respondent, v Norah Maroulis, Individually and as Executrix of Rose Rabey, Deceased, et al., Appellants, et al., Defendant. — Judgment of the Supreme Court, New York County (Eugene Sullivan, Sr., Special Referee), entered on October 15, 1982, which awarded plaintiff-respondent $27,223.73 in damages, consisting of $18,054 on its claim for unpaid additional capital contributions, plus interest from 1975, and costs and disbursements, is affirmed, without costs. Plaintiff-respondent Hotel Prince George Affiliates is a general partnership that was formed in 1960 to operate the Hotel Prince George on 28th Street in Manhattan. In the early 1970's, the partnership was in dire financial straits. According to the balance sheet for the partnership for 1975, liabilities more than doubled assets. Pursuant to the terms of an amended partnership agreement dated December 1, 1969, the partnership, beginning in 1974, sent out a series of "call notices" to all the general partners, demanding additional capital contributions. In large part due to such increased capitalization, the partnership has discharged its indebtedness and, since 1979, no longer operates the hotel. Until his death in 1964, David Rabey, the father of defendant-appellant Norah Maroulis, was a general partner owning a 14.15% interest in the respondent as then constituted. Upon his death, Rose Rabey, his wife, and Norah Maroulis, his daughter, each inherited one half of his interest in the partnership. Both Rose Rabey and Norah Maroulis signed the 1969 amended partnership agreement which recites that Rose Rabey owned a 7.08% interest in the partnership, and Norah Maroulis a 7.07% interest. Rose Rabey and Norah Maroulis each paid over $10,000 in additional capital contributions in response to call notices sent in October, 1974 and January, 1975. On July 22, 1975, Rose Rabey died. Under her last will and testament, her daughter, Norah Maroulis, is executrix and sole beneficiary. Norah Maroulis paid the sums demanded for additional

capital contribution with respect to her own shares in response to call notices dated May 22, 1975, August 7, 1975 and September 18, 1975, but the sums demanded under those call notices against Rose Rabey, and subsequently against her estate, remain unpaid and are the subject of this action. Although the complaint names Norah Maroulis personally as well as in her capacity as executrix, the damages sought relate only to unpaid capital contributions demanded from Rose Rabey or her estate. Norah Maroulis is named in her personal capacity on the alleged ground that she depleted the assets of the estate in order to defeat the partnership's claim. The 1969 amended partnership agreement provides that in the event of the death of a partner, the estate of such deceased partner must join in reforming the partnership after the dissolution caused by such partner's death. To this end, each partner, by signing the 1969 agreement, designated each of the active partners as attorney in fact to execute a reformation agreement on behalf of the estate of such deceased partner. The agreement recites that the power is not to be revoked by the death of the partner granting the power inasmuch as the power is coupled with an interest. In November, 1975, Norah Maroulis refused to sign a proposed reformation agreement, the purpose of which was to reconstitute partnership after the dissolution caused by Rose Rabey's death. Two of the partners had previously executed the reformation agreement as attorneys in fact for the estate of Rose Rabey. The partnership then brought an action in Supreme Court, New York County, against Norah Maroulis both individually and as executrix of the estate of Rose Rabey. In denying plaintiff's motion for summary judgment, Special Term (A. Tyler, J.) upheld the validity of the reformation provision employing the irrevocable power of attorney, but held that no person could be compelled to remain a partner against his or her will (see *Napoli v Domnitch,* 18 AD2d 707, affd without opn 14 NY2d 508) and that Norah Maroulis had in effect caused a dissolution by her declaration that she did not wish to remain a partner in any capacity. The court also held that a trial was required to determine what relation existed among the parties, and what liability, if any, Norah Maroulis has for unpaid capital contributions. Special Term also held that a detailed accounting had been rendered by the furnishing of the auditor's report appended to the motion papers, thus satisfying any requirement of an accounting before partners may sue each other at law. No appeal was taken from this order. On consent of the parties, Trial Term (I. Rubin, J.), by order dated August 3, 1981, referred the matter to special referee Eugene Sullivan, Sr., to hear and determine the issues on a stipulation of agreed facts. This appeal is from a judgment rendered by the special referee in favor of the partnership. Defendant-appellant raises numerous contentions on this appeal. First, appellant contends that section 69 of the Partnership Law has not been complied with. Subdivision 2 of section 69 provides in pertinent part: "When dissolution is caused in contravention of the partnership agreement the rights of the partners shall be as follows * * * (c) A partner who has caused the dissolution wrongfully shall have * * * (II) If the business is continued * * * the right as against his copartners * * * to have the value of his interest in the partnership, less any damages caused to his copartners by the dissolution, ascertained and paid to him in cash, or the payment secured by bond approved by the court, and to be released from all existing liabilities of the partnership". The special referee correctly determined that there was no existing partnership equity at the time of the wrongful dissolution inasmuch as liabilities far exceeded assets, and thus there was no value to be paid under section 69 of the Partnership Law. This conclusion is buttressed by the fact that appellant's counsel sent a letter dated October 30, 1975 to counsel for the partnership offering to him and all other partners one half of the interest formerly held by David Rabey in Hotel Prince

George Affiliates for less than $1. Appellant also argues that the power of attorney granted in the 1969 amended partnership agreement was revoked by the death of Rose Rabey because it was not coupled with an interest. This argument cannot be sustained. The interest with which the power was coupled was each partner's interest in the partnership which was the subject matter of the power. (See *Matter of Jarmakowski,* 169 Misc 463.) Appellant's argument that the liability of Rose Rabey's estate must be limited to the funds already committed at the time of the dissolution caused by her death is without merit in light of our sustaining the enforceability of the contractual arrangement for reformation incorporating the estate of a deceased partner through the exercise of the irrevocable power of attorney. The estate's liability continued until the executrix repudiated the partnership agreement and ceased to be a partner. Appellant's contention that the second cause of action, which charges her personally with liability for the estate's failure to pay the additional capital contribution demands, should have been dismissed is also without merit in light of the stipulated fact that appellant commingled the assets of the estate with her own. The final contention raised by appellant is that this action is premature because no judicial accounting has been rendered. The special referee was correct in his conclusion that the ruling at Special Term that a detailed accounting had been rendered by the furnishing of the auditor's report was binding on him under the doctrine of "law of the case." While it is clear that the mere furnishing of an auditor's report does not constitute a judicial accounting, which is an equitable action, we see no need, under the circumstances of this case, to require a remand for such a proceeding. Although there has been in this case an entrusting of sums to the partnership with respect to which the partnership owes a fiduciary duty to reveal its dealings (see *Hermes v Compton,* 260 App Div 507, 509), there is no allegation that the former financial distress of the partnership resulted from fraud, self-dealing, or any other breach of fiduciary duties. As the dissent correctly states, it is the general rule that partners may not sue each other at law but must first resort to equity, usually for an accounting. (See *Arnold v Arnold,* 90 NY 580.) This is so because, traditionally, courts of equity had exclusive jurisdiction over trusts and other matters involving fiduciary duties. With the merger of law and equity in New York (CPLR 103, subd [a]), there is little that can be determined in an action for an accounting that cannot be just as well decided in an action at law using modern discovery devices. In view of the background, a remand for an accounting at this late stage in the proceedings would only be dilatory. Concur — Kupferman, J. P., Sullivan and Milonas, JJ.

Asch and Silverman, JJ., dissent in a memorandum by Silverman, J., as follows: We would reverse the judgment appealed from and direct an interlocutory judgment for a partnership accounting and remand the matter for such an accounting. We see nothing in this case to take it out of the general rule that partners cannot sue each other at law, and that the proper remedy is an action in equity, usually for an accounting. (*Arnold v Arnold,* 90 NY 580, 583; *Dalury v Rezinas,* 183 App Div 456, 460, affd 229 NY 513; *Bassett v American Meter Co.,* 20 AD2d 956, 957; *Pace v Perk,* 81 AD2d 444, 453.) The defect is not merely one of form. The rights and liabilities of the partners, *inter sese,* are not finally known until there has been a judicial accounting. Here defendant-appellant Maroulis has been sued at law for the amount of the capital contributions which were called for by the partnership, and judgment has been rendered for such contributions. But such a capital contribution is not the absolute property of the other partners in which the contributing partner has no interest; it is only one element in the complex of rights and liabilities whose net result can result in a judgment in some as yet undetermined amount one way or the other. It is claimed that defendant-appellant Maroulis and her predecessor

have wrongfully dissolved the partnership. But the remedy for that is "damages for breach of the agreement." (Partnership Law, § 69, subd 2, par [a], cl [II].) There is no necessary relationship between the amounts that the other partners happened to have called for as capital contributions and such damages. The fact that defendant-appellant offered to transfer her interest in the partnership to the remaining partners for a nominal consideration indicates that she probably thought her interest in the partnership was worthless; that is not at all the same as an admission that she and her predecessor partner owed $18,054, the principal amount of the judgment. Nor are the audit statements furnished from time to time to the partners an adequate substitute for a judicial accounting. Audit statements and other such financial statements prepared by professional accountants are prepared to show the financial condition of the enterprise in accordance with "generally accepted accounting principles." (Thus in accordance with such principles, the financial statement shows real estate at historical cost less depreciation rather than realizable value.) A judicial accounting on the other hand is a judicial action which results in a final judgment whereby a court adjudicates the rights and liabilities of parties to a venture among themselves and in relation to the venture or its property, and directs the parties to make payments in accordance with that adjudication. A judicial accounting is the appropriate procedure whereby partners may sue each other. The suggestion by plaintiff that the defendant-appellant is barred by the Statute of Limitations from requesting an accounting is fallacious. To begin with, the defendant-appellant is not suing the plaintiff; a judicial accounting is the form in which plaintiff partnership must sue defendant-appellant, their former partner. In any event, the Statute of Limitations would have been tolled under CPLR 203 (subd [c]). We note also that as early 1976, on the denial of a motion for summary judgment, the issue of action at law or accounting had been raised (the motion Judge recognizing "that partners cannot sue each other at law for anything relating to the partnership unless there has been an accounting," but believing that the auditor's report satisfied that requirement).