EDITH McLENITHAN et al., Respondents, v RICHARD E. McLENITHAN, Appellant. (And a Third-Party Action.) [710 NYS2d 674] —Carpinello, J. Appeal from an order of the Supreme Court (Dier, J.), entered August 2, 1999 in Washington County, which denied defendant's motion for summary judgment dismissing the complaint.

This action for legal malpractice and fraud arises out of a failed real estate development project in Washington County. The hundreds of acres of farmland upon which the project was to have been developed was originally owned by plaintiff Lawrence McLenithan (hereinafter plaintiff) and his mother, plaintiff Edith McLenithan, who are defendant's cousin and aunt, respectively. In 1986, the property had been placed for sale with a $450,000 asking price. Later that same year, plaintiff was approached by James Barry, who purportedly had experience in residential real estate projects, about developing the property with single-family homes. Barry suggested that plaintiff "get ahold of [his] cousin" (i.e., defendant) for a meeting between the three men.

This meeting took place and ultimately these three men, along with one other person (Bruce Ramsey), entered into a joint venture agreement to develop the property. In this vein, they also formed their own corporation of which they were the sole principals. According to plaintiffs, defendant, on his own initiative, arranged to become a 25% partner in this venture. According to defendant, he was asked by the others to participate in the development of the property. Regardless of how it came to pass that defendant ultimately became a partner in the project, plaintiffs maintain that they relied on him to represent their legal interests in the development of the property.

In 1987, at the claimed advice of defendant, plaintiff entered into the joint venture agreement and thereafter plaintiffs deeded over a significant portion of the property to the corporation for no immediate remuneration. Suffice it to say, the project failed and the farmland was ultimately foreclosed upon when the corporation defaulted on a line of credit obtained through a local bank. The sole issue before this Court is whether an attorney-client relationship existed between the parties relative to the real estate project. Defendant claims that no attorney-client relationship existed in the context of the development project and that he was merely a fellow investor of plaintiff. Plaintiffs maintain that they "involved" defendant as their attorney in the project and that they believed he proceeded in this capacity despite his status as a shareholder. We agree with Supreme Court's finding that questions of fact have been raised precluding resolution of this issue as a matter of law and, accordingly, affirm.

To be sure, formality is not essential to the formation of an attorney-client relationship; rather, "it is necessary to look at the words and actions of the parties to ascertain" if such a relationship was formed (*C.K. Indus. Corp. v C.M. Indus. Corp.*,

213 AD2d 846, 848). Here, the words and actions of the parties reveal, at best, a question of fact as to whether they indeed shared an attorney-client relationship.

While neither plaintiff nor his mother had an express discussion with defendant concerning his status as their legal counsel throughout the duration of the development project—each simply assumed that he was indeed representing their legal needs—we do not find this factor fatal in this case, particularly given their familial relationship and defendant's representation of them in the past and during the project.* Of critical importance, plaintiffs each testified that defendant advised them to sign various documents pertaining to the project, including the deed transferring their property to the corporation. Furthermore, while defendant testified that the only legal services he was to perform in the context of the project was closing on the developed lots, the record reveals that he represented plaintiffs in the purchase and sale of portions of the subject property once the development was underway. Thus, although plaintiffs' unilateral beliefs alone do not confer upon them the status of defendant's clients (see, e.g., Volpe v Canfield, 237 AD2d 282, 283, lv denied 90 NY2d 802; Jane St. Co. v Rosenberg & Estis, 192 AD2d 451, lv denied 82 NY2d 654), more than a mere unilateral belief has been offered in this case.

For example, defendant's billing records from his former law firm reveal that he charged 2½ hours of "professional services" time to plaintiff for an April 16, 1987 "meeting with Jim Barry and Larry." For the purposes of this summary judgment motion, it matters little that plaintiff may not have actually received a bill for this service or even have been aware that defendant internally charged legal time to him since the sole inquiry before this Court is whether the "words and actions" of the parties suggest the formation of a professional relationship (C.K. Indus. Corp. v C.M. Indus. Corp., supra, at 848). Moreover, although defendant testified that he did not "directly" understand that plaintiffs were expecting him to provide legal services vis-à-vis the project, he admitted that he never specifically disavowed his role as their attorney. Given his status as their family attorney generally, his representation of them in land transfers related to the development project and evidence that he advised them to sign certain documents specifically relating to the project, issues of fact have been raised as to

---

* Despite any explicit conversation between the parties themselves, according to plaintiff, defendant told another family member that he was indeed representing them in the development project.

whether an attorney-client relationship existed (*see generally*, *Gardner v Jacon*, 148 AD2d 794; *cf.*, *Solondz v Barash*, 225 AD2d 996).

Cardona, P. J., Graffeo, Rose and Lahtinen, JJ., concur. Ordered that the order is affirmed, with costs.