09-1836-cv
Steinbeck v. McIntosh & Otis, Inc.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 13th day of October, two thousand ten.

PRESENT: ROBERT D. SACK,
REENA RAGGI,
  *Circuit Judges*,
JOHN G. KOELTL,
  *District Judge*.[*]

------------------------------------------------------------------------

THOMAS STEINBECK and BLAKE SMYLE,

  *Plaintiffs-Counter-Defendants-Appellants*,

NANCY STEINBECK,

  *Intervenor-Plaintiff*,

  v.             No. 09-1836-cv

STEINBECK HERITAGE FOUNDATION, STEVEN FRUSHTICK, SCOTT KAFFAGA, individually and as executor of the Estate of Elaine Anderson Steinbeck, THE ESTATE OF ELAINE ANDERSON STEINBECK,

---

[*] District Judge John G. Koeltl of the United States District Court for the Southern District of New York, sitting by designation.

*Defendants-Counter-Claimants-Appellees*,

DOES 1-10,

*Defendants-Appellees*,

DAVID SCOTT FARBER, BAHAR KAFFAGA, JEAN
ANDERSON BOONE, and JEBEL KAFFAGA,

*Defendants-Counter-Claimants-
Intervenors-Defendants-Appellees*,

FRANCIS ANDERSON ATKINSON, SCOTT KAFFAGA,
individually and as executor of the Estate of Elaine
Anderson Steinbeck, MCINTOSH & OTIS, INC.,
SAMUEL PINKUS, ANDERSON FARBER RUNKLE,
and EUGENE H. WINICK,

*Defendants-Intervenors-Defendants-Appellees*.

-----------------------------------------------------------------------------

APPEARING FOR APPELLANTS:    JENNIFER ANCONA SEMKO, Baker & McKenzie LLP, Washington, D.C.

APPEARING FOR APPELLEES:    SUSAN J. KOHLMANN (Tarsha A. Phillibert, *on the brief*), Jenner & Block LLP, New York, New York, *for Waverly Scott Kaffaga, individually and as executor of the Estate of Elaine Anderson Steinbeck, David Scott Farber, Anderson Farber Runkle, Jebel Kaffaga, Bahar Kaffaga, and Jean Anderson Boone.*

ELIZABETH A. MCNAMARA (Lacy H. Koonce, III, *on the brief*), Davis Wright Tremaine LLP, New York, New York, *for McIntosh & Otis,*

2

*Inc., Eugene H. Winick, and Samuel Pinkus.*

Appeal from a judgment of the United States District Court for the Southern District of New York (George B. Daniels, *Judge*).

UPON DUE CONSIDERATION IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the December 4, 2009 judgment of the district court is AFFIRMED.

This court is already well familiar with the longstanding dispute among the heirs of author John Steinbeck about copyright interests in his works. See Penguin Group (USA) Inc. v. Steinbeck, 537 F.3d 193, 204 (2d Cir. 2008). On this appeal, plaintiffs Thomas Steinbeck and Blake Smyle, the author's son and grandaughter (by Steinbeck's deceased son, John IV), challenge an award of summary judgment in favor of defendants the estate of Elaine Steinbeck, the author's third wife and widow, and McIntosh & Otis, Inc. ("M & O"), a literary agency administering the relevant Steinbeck copyrights, on claims of (1) breach of fiduciary duty, (2) promissory estoppel, and (3) unjust enrichment (with an accompanying request for imposition of a constructive trust). See Steinbeck v. McIntosh & Otis, Inc., No. 04 Civ. 5497, 2009 WL 928189 (S.D.N.Y. Mar. 31, 2009).[1] Plaintiffs further appeal a

---

[1] In a footnote in their appellate brief, plaintiffs suggest that, for the same reasons the district court erred in dismissing their fiduciary duty claim, it erred in dismissing claims against M & O for fraud, negligent misrepresentation, and interference with economic advantage. Generally, we deem an argument raised only in a footnote as waived. See Norton v. Sam's Club, 145 F.3d 114, 117 (2d Cir. 1998). We see no reason to depart from this rule in this case. See In re Nortel Networks Corp. Sec. Litig., 539 F.3d 129, 133 (2d Cir. 2008) (noting that waiver doctrine is prudential and may be disregarded in our discretion). In any

3

judgment on the pleadings in favor of M & O on its counter-claim challenging the validity

of Thomas Steinbeck's purported termination of defendant as literary agent for the estate.

See Steinbeck v. McIntosh & Otis, Inc., No. 04 Civ. 5497, 2009 WL 928171 (S.D.N.Y. Mar.

31, 2009).

We review an award of summary judgment de novo, "resolving all ambiguities and

drawing all permissible factual inferences in favor of the party against whom summary

judgment is sought." Burg v. Gosselin, 591 F.3d 95, 97 (2d Cir. 2010) (internal quotation

marks omitted). We will uphold such an award only if the record reveals no genuine issues

of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R.

Civ. P. 56(c)(2). We review a judgment on the pleadings de novo, accepting the pleaded

allegations as true and drawing all reasonable inferences in favor of the opposing party, see,

e.g., LaFaro v. N.Y. Cardiothoracic Grp., PLLC, 570 F.3d 471, 475-76 (2d Cir. 2009)

(characterizing legal standards for review of motions to dismiss and for judgment on

pleadings as "indistinguishable"), consistent with the pleading standards articulated in

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009), and Bell Atlantic Corp. v. Twombly, 550

U.S. 544, 570 (2007). In applying these standards here, we assume the parties' familiarity

with the facts and procedural history of this case, which we reference only as necessary to

explain our decision to affirm.

---

event, because we identify no merit in plaintiffs' fiduciary duty challenge, see infra at 5-11,
these derivative arguments also fail.

1.    Breach of Fiduciary Duty

    a.    Elaine Steinbeck

Thomas Steinbeck contends that the district court erred in concluding as a matter of law that the 1983 settlement agreement among himself, his brother John IV, and Elaine Steinbeck (the "1983 Agreement"), as well as powers of attorney in favor of Elaine Steinbeck executed by the sons in connection with that agreement, did not create an agency relationship with Elaine Steinbeck assuming fiduciary obligations to the sons and their successors in interest.  We disagree.

Under New York law, an agency relationship "results from a manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and the consent by the other to act."  New York Marine & Gen. Ins. Co. v. Tradeline (L.L.C.), 266 F.3d 112, 122 (2d Cir. 2001) (internal quotation marks omitted).  A principal's ability to exercise control over its agent is an essential element of agency.  See generally Restatement (Third) of Agency § 1.01, cmt. f; accord Mazart v. State, 109 Misc. 2d 1092, 1099, 441 N.Y.S.2d 600, 605 (N.Y. Ct. Cl. 1981) (noting that "there can be no agency relationship where the alleged principal has no right of control over the alleged agent").  Where, as here, parties contend that an agency relationship is established by contract, see, e.g., Pyramid Champlain Co. v. R.P. Brosseau & Co., 267 A.D.2d 539, 544, 699 N.Y.S.2d 516, 522 (3d Dep't 1999), a court will look to the language of that agreement to ascertain the relationship created between the parties, see EBC I, Inc. v. Goldman Sachs & Co., 5 N.Y.3d

5

11, 19-20, 799 N.Y.S.2d 170, 175 (2005); <u>Northeast Gen. Corp. v. Wellington Adver., Inc.</u>, 82 N.Y.2d 158, 162, 604 N.Y.S.2d 1, 3 (1993). When we do so here, we conclude that the 1983 Agreement did not create an agency relationship.

The 1983 Agreement increased the Steinbeck sons' shares in certain copyright revenue, from one-quarter to one-third each, and, in return, conferred upon Elaine Steinbeck "the complete power and authority to negotiate, authorize and take action with respect to the exploitation and/or termination of rights in the works of John Steinbeck in which [John IV] and [Thomas] have or will have renewal or termination rights." 1983 Agreement ¶ 5. This language is unambiguous and forecloses any argument that the parties intended the Steinbeck sons to retain control over Elaine Steinbeck's exercise of the authority conferred upon her, as would be necessary to create an agency relationship. <u>See, e.g.</u>, <u>Meese v. Miller</u>, 79 A.D.2d 237, 241, 436 N.Y.S.2d 496, 499-500 (4th Dep't 1981); <u>Garcia v. Herald Tribune Fresh Air Fund, Inc.</u>, 51 A.D.2d 897, 897, 380 N.Y.S.2d 676, 678 (1st Dep't 1976); <u>Krom v. Sharp & Dohme, Inc.</u>, 7 A.D.2d 761, 761, 180 N.Y.S.2d 99, 101 (3d Dep't 1958). The conclusion is reinforced by the fact that the 1983 Agreement imposed only specific circumscribed reporting obligations on Elaine Steinbeck, not the full reporting obligations associated with a fiduciary appointment. <u>See generally</u> Restatement (Third) of Agency ch. 8.

The powers of attorney executed in favor of Elaine Steinbeck support no different conclusion. In urging otherwise, plaintiffs point to the words "attorney-in-fact" used in those documents, which they submit New York recognizes to create an agency relationship and

6

attendant fiduciary obligations. See In re Estate of Ferrara, 7 N.Y.3d 244, 254, 819 N.Y.S.2d 215, 221 (2006). While reference to an attorney-in-fact can certainly constitute evidence of agency, we do not understand New York law to depart from the general principle that labels are not dispositive of the question. See generally Restatement (Third) of Agency § 1.02 ("Although agency is a consensual relationship, how the parties to any given relationship label it is not dispositive."). The 1983 Agreement makes clear that the powers of attorney were executed solely to effectuate the authority conferred upon Elaine Steinbeck under that Agreement. That authority was "complete" with no control retained by the Steinbeck sons. Thus, because the 1983 Agreement did not create an agency relationship between Elaine Steinbeck and the Steinbeck sons, or otherwise impose fiduciary obligations on her, nor did the powers of attorneys intended to effectuate it. See Keyes v. Metro. Trust Co. of N.Y.C., 220 N.Y. 237, 242, 115 N.E. 455, 456 (1917) ("The purpose of a written power of attorney is not to define the authority of the agent, as between himself and his principal, but to evidence the authority of the agent to third parties with whom the agent deals."); accord In re Anyon's Estate, 137 Misc. 582, 585, 244 N.Y.S. 244, 248 (N.Y. Sur. Ct. 1930); see also Villanueva v. Brown, 103 F.3d 1128, 1136 (3d Cir. 1997) (holding, in applying New Jersey law, that "primary purpose of a power of attorney is not to define the authority conferred on the agent by the principal, but to provide third persons with evidence of agency authority"). Rather, the powers of attorney here at issue conferred upon Elaine Steinbeck power coupled with an interest in the very copyrights that were the subject of the power conferred, an

7

arrangement from which no fiduciary obligation arises. See 330 Acquisition Co., LLC. v. Regency Sav. Bank, F.S.B., 306 A.D.2d 154, 155, 761 N.Y.S.2d 185, 186 (1st Dep't 2003); Hotel Prince George Affiliates v. Maroulis, 98 A.D.2d 652, 654, 469 N.Y.S.2d 718, 721 (1st Dep't 1983), rev'd on other grounds, 62 N.Y.2d 1005, 1008-09, 479 N.Y.S.2d 489, 490-91 (1984); French v. Kensico Cemetery, 264 A.D. 617, 619, 35 N.Y.S.2d 826, 828-29 (2d Dep't 1942), aff'd, 291 N.Y. 77, 80 (1943); see also Restatement (Third) of Agency § 3.12, cmt. b & illus. 5.

Accordingly, we conclude that plaintiffs fail as a matter of law to state a claim against Elaine Steinbeck for breach of fiduciary duty.

b.      M & O

We similarly reject Thomas Steinbeck's argument that M & O owed and breached fiduciary obligations created by the 1983 Agreement and powers of attorney. To the extent M & O is charged with fiduciary duties derivatively as Elaine Steinbeck's subagent, that argument is foreclosed by our conclusion that Elaine was not an agent of the Steinbeck sons. See generally Empire State Ins. Co. v. Am. Cent. Ins. Co., 138 N.Y. 446, 449, 34 N.E. 200, 201 (1893); Restatement (Third) of Agency § 3.16. Nor did the 1983 Agreement appoint M & O to act as agent for the Steinbeck heirs generally. The Steinbeck sons surrendered "complete authority" to Elaine Steinbeck to exploit John Steinbeck's copyrights and also vested her with "sole discretion" to terminate M & O's agency. Under these circumstances, the 1983 Agreement does not manifest Thomas Steinbeck's ability to control M & O as

8

would be required to create an agency relationship giving rise to fiduciary obligations.[2]

Nor did fiduciary duties arise by virtue of an alleged attorney-client relationship between Thomas Steinbeck and certain principals at M & O. "Since an attorney-client relationship does not depend on the existence of a formal retainer agreement or upon payment of a fee, a court must look to the words and actions of the parties to ascertain the existence of such a relationship." Moran v. Hurst, 32 A.D.3d 909, 911, 822 N.Y.S.2d 564, 566 (2d Dep't 2006) (internal citations omitted); see also Talansky v. Schulman, 2 A.D.3d 355, 359, 770 N.Y.S.2d 48, 52 (1st Dep't 2003) (finding fact issue where "totality of the evidence at least suggest[ed] that defendant was acting as plaintiff's attorney"). Here, Thomas Steinbeck asserts that certain M & O principals who were licensed attorneys held themselves out as copyright experts, expressed sympathy for him, and told him they had his best interests in mind, thereby persuading him "to have trust and confidence in their advice concerning his interests in his father's works." Plaintiffs Thomas Steinbeck's & Blake Smyle's Rule 56.1 Statement of Additional Material Facts in Opp'n to the M & O Defs.' Mot. for Summ. J. ¶ 48, Steinbeck v. Steinbeck, No. 04 Civ. 5497 (S.D.N.Y. Oct. 15, 2008). Even accepting these allegations as true, they are insufficient to allow a reasonable factfinder

---

[2] To the extent Thomas Steinbeck urges reversal of summary judgment to allow him to pursue discovery as to whether M & O was complying with Elaine Steinbeck's directions, we are not persuaded because such inquiry could not reasonably be expected to create a genuine issue of material fact as to the existence of an agency relationship between M & O and Thomas Steinbeck. See Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 303 (2d Cir. 2003).

to infer an attorney-client relationship, especially in light of record evidence that Thomas Steinbeck was at the relevant times represented by other counsel. See, e.g., Moran v. Hurst, 32 A.D.3d at 911, 822 N.Y.S.2d at 566 ("The record is devoid of any evidence indicating that [the attorneys] either affirmatively led [the alleged client] to believe that they were acting as his attorney or knowingly allowed him to proceed under that misconception."); cf. McLenithan v. McLenithan, 273 A.D.2d 757, 759, 710 N.Y.S.2d 674, 675-76 (3d Dep't 2000) (finding factual issue as to attorney-client relationship where attorney advised plaintiffs to sign certain documents, previously represented plaintiffs, had familial relationship with plaintiffs, and represented them with respect to aspects of instant transaction).

Accordingly, we conclude that the district court properly granted summary judgment in favor of M & O on the breach of fiduciary duty claim.

2.      Promissory Estoppel

Under New York law, a claim for promissory estoppel requires "a clear and unambiguous promise, reasonable and foreseeable reliance by the party to whom the promise is made, and an injury sustained in reliance on that promise." Williams v. Eason, 49 A.D.3d 866, 868, 854 N.Y.S.2d 477, 479 (2d Dep't 2008); see also Braddock v. Braddock, 60 A.D.3d 84, 95, 871 N.Y.S.2d 68, 77 (1st Dep't 2009). The district court concluded that Thomas Steinbeck failed to adduce evidence raising a triable issue of fact on the reliance element. We may "affirm the district court's judgment on any ground appearing in the record, even if the ground is different from the one relied on by the district court." ACEquip Ltd. v. Am. Eng'g Corp., 315 F.3d 151, 155 (2d Cir. 2003).

The record makes clear that Thomas Steinbeck could not reasonably have relied on Elaine Steinbeck's purported oral promise that he could "market all rights in" John Steinbeck's travelogue, Travels With Charley, Compl. ¶ 48(c), because such a representation modifies the relationship between the parties established by the 1983 Agreement, which by its terms can only be done in writing. See, e.g., Capricorn Investors III, L.P. v. Coolbrands Int'l, Inc., 66 A.D.3d 409, 410, 886 N.Y.S.2d 158, 159 (1st Dep't 2009) (holding that party cannot reasonably rely on promise that conflicts with written agreement's express terms); Ruffino v. Neiman, 17 A.D.3d 998, 1000, 794 N.Y.S.2d 228, 229 (4th Dep't 2005) (same); accord Rose v. Spa Realty Assocs., 42 N.Y.2d 338, 343, 397 N.Y.S.2d 922, 926 (1977) (noting that, generally, "if the only proof of an alleged agreement to deviate from a written

11

contract is the oral exchanges between the parties, the writing controls").

3.     Unjust Enrichment and Constructive Trust

Under New York law, a claim for unjust enrichment requires proof "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc., 448 F.3d 573, 586 (2d Cir. 2006) (internal quotations omitted); see also Old Republic Nat'l Title Ins. Co. v. Luft, 52 A.D.3d 491, 491-92, 859 N.Y.S.2d 261, 262 (2d Dep't 2008). Meanwhile, to impose a constructive trust, the law demands "(1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer made in reliance on that promise; and (4) unjust enrichment." In re Ades & Berg Grp. Investors, 550 F.3d 240, 245 (2d Cir. 2008); see also Abacus Fed. Sav. Bank v. Lim, 75 A.D.3d 472, 473, 905 N.Y.S.2d 585, 587 (1st Dep't 2010); Rose v. Rose, 72 A.D.3d 1060, 1060, 898 N.Y.S.2d 889, 890 (2d Dep't 2010).

To support their claim for unjust enrichment, plaintiffs appear to argue that Elaine Steinbeck benefitted at Blake Smyle's expense by withholding information from the granddaughter about her termination rights and then exercising those rights herself without seeking Blake Smyle's consent in a 1994 transaction the validity of which we upheld in Penguin Group (USA) Inc. v. Steinbeck, 537 F.3d at 204. This was, however, precisely what Elaine Steinbeck was empowered to do under the 1983 Agreement, which expressly bound Blake Smyle as John Steinbeck IV's successor in interest. Blake Smyle's consent was not

required for the exercise of Elaine Steinbeck's authority under that Agreement, and any attempt by the granddaughter to exercise rights transferred to Elaine Steinbeck likely would have violated the 1983 Agreement. The parties do not dispute that Blake Smyle continues to receive pro rata royalty payments owed to her under the 1994 agreement she claims unjustly enriched Elaine Steinbeck. As a result, we identify no benefit derived by Elaine Steinbeck at Blake Smyle's expense and, consequently, conclude that plaintiffs' claims for unjust enrichment and imposition of a constructive trust were properly dismissed as without merit.

4.      Termination of M & O

Thomas Steinbeck argues that the "sole discretion" vested with Elaine Steinbeck to terminate M & O did not descend to Elaine Steinbeck's heirs because the 1983 Agreement was a personal services contract and, as a result, was not governed by New York's general rule that, "in the absence of express words, . . . the parties to a contract intend to bind not only themselves, but their personal representatives." Gura v. Herman, 227 A.D. 452, 454, 238 N.Y.S. 230, 233 (2d Dep't 1929), aff'd, 253 N.Y. 618, 171 N.E. 808 (1930); see Warner v. Kaplan, 71 A.D.3d 1, 4, 892 N.Y.S.2d 311, 313-14 (1st Dep't 2009); DiScipio v. Sullivan, 30 A.D.3d 660, 661, 816 N.Y.S.2d 576, 577 (3d Dep't 2006). That distinction does not apply here.[3]

---

[3] We do not consider whether M & O should be permitted to invoke the 1983 Agreement because Thomas Steinbeck did not raise that issue before the district court. See

First, the 1983 Agreement is not a services contract in the manner described in the decisions relied upon by Thomas Steinbeck.   See, e.g., Buccini v. Paterno Const. Co., 253 N.Y. 256, 257-58, 170 N.E. 910, 911 (1930) (Cardozo, J.).  Those decisions hold that where unique and extraordinary services of a particular obligor are the subject of a contract, that obligor's death absolves the parties of any unfulfilled performance obligations. See, e.g., id.; Lorillard v. Clyde, 142 N.Y. 456, 462, 37 N.E. 489, 491 (1894) (citing Taylor v. Caldwell, 122 Eng. Rep. 309 (K.B. 1863)).  Here, Thomas Steinbeck did not contract to obtain Elaine Steinbeck's services; rather, he and his brother contracted to obtain a greater share of royalty payments in return for yielding complete authority over the copyrights at issue to Elaine Steinbeck, including sole discretion to terminate M & O as literary agent.

Second, nothing in the record indicates that Elaine Steinbeck's exercise of "sole discretion" required unique and extraordinary skills sufficient to qualify this provision of the 1983 Agreement as a personal services contract.  Thomas Steinbeck argues that Elaine Steinbeck's experience made her "uniquely well-positioned to handle the concededly difficult and complex process of effectively exploiting the copyrights."  Reply Br. at 17. Even if that were true, the power at issue is the authority to terminate a literary agent, not Elaine's overall authority to manage the copyrights.  We are not persuaded that the exercise

Singleton v. Wulff, 428 U.S. 106, 120 (1976); Diaz v. Paterson, 547 F.3d 88, 94-95 (2d Cir. 2008).  Under the circumstances, we perceive no unfairness in enforcing Thomas Steinbeck's waiver.

14

of <u>that</u> authority required extraordinary skills possessed uniquely by Elaine Steinbeck.

Finally, Thomas Steinbeck has not identified a material factual dispute regarding whether Elaine Steinbeck, acting through M & O principals, surrendered her right to terminate M & O's agency in her sole discretion. Even assuming that Elaine Steinbeck so surrendered those powers of attorney, Thomas Steinbeck offers no reason for interpreting that authority as conditioned upon Elaine Steinbeck's holding her stepson's power of attorney. Just as that power of attorney did not create Elaine's authority, which derived from the 1983 Agreement, neither would release of the power of attorney terminate that authority. Consequently, we conclude that Elaine's contractual right to terminate the agency relationship with M & O, like other contractual rights not personal in nature, was fully descendible.

We have considered plaintiffs' other arguments and find them to be without merit. Accordingly, the December 4, 2009 judgment of the district court is hereby AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court

15